# Wytheville.

## NATIONAL MUTUAL BUILDING AND LOAN ASSOCIATION AND ANOTHER v. M. J. ASHWORTH.

### JULY 18, 1895.

1. ESTOPPEL—*Allegation—Admissions.*—The fact of incorporation of a company, or the existence of any other fact, cannot be called in question by a party who has alleged that fact in his pleading, or expressly admitted it in the facts agreed in the case.

2. FOREIGN CORPORATIONS—*Section 1104 of the Code—Allegations and Proof.*— A bill which charges that a foreign corporation has not complied with the provision of section 1104 of the Code, must also allege in what particulars it has failed to do so. The investigation will be confined to particulars charged.

3. CONFLICT OF LAW—*Place of Performance—Interest—Usury.*—A contract made in one State, but to be performed in another, is, as a general rule, governed by the laws of the place of performance; and, if the rate of interest allowed by the latter is higher than that of the place of contract, the parties may stipulate for the higher rate without incurring the penalties of usury.

4. TRUSTEES—*Sale—Amount of Debts.*—Before a sale under a deed of trust to secure the payment of money, the amount of the debt secured should be definitely fixed.

Appeal from a decree of the Circuit Court of Washington county, pronounced April 23, 1895, in a suit in chancery wherein the appellee was the complainant and the appellant and another were the defendants.

*Reversed.*

This was a suit in chancery instituted in the Circuit Court of Washington county by M. J. Ashworth against the

National Mutual Building and Loan Association of New York and Wm. F. Rhea, trustee, praying that the defendants be enjoined from making sale of a house and lot of the complainant, on the grounds that the debt secured to the defendant company in the deed of trust, under which the property had been advertised for sale, was usurious, and because the defendant had not complied with the provisions of section 1104 of the Code, and had no right to do business in this State, and hence that the contract of loan with the complainant was void. The defendants demurred to and answered the bill. They also filed their cross-bill against the said M. J. Ashworth, setting out all the particulars of the loan, the incorporation of the said company, and its compliance with the laws of Virginia regulating the rights of such companies to do business in this State, and praying a personal decree against her for the amount due the company, and for a sale of said house and lot, to pay said amount, and for general relief. The said M. J. Ashworth demurred to and answered this cross-bill, and also filed her amended bill against the same defendants. By agreement of counsel the answer and cross-bill of the defendants were treated also as their answer to said amended bill.

The other facts sufficiently appear in the opinion of the court.

*Penn & Cocke* and *Rhea & Peters*, for the appellants.

*J. S. Ashworth*, for appellee.

BUCHANAN, J., delivered the opinion of the court.

The appellee filed her bill in the Circuit Court of Washington county, praying for an injunction to restrain the appellant, W. F. Rhea, trustee, from selling a house and lot to

satisfy a debt due from her to the National Mutual Building and Loan Association, the other appellant, and secured thereon by a deed of trust.

The grounds upon which she based her right to the injunction and to the other relief prayed for were:

(1) That the debt secured by the deed of trust, was usurious and void, except as to the principal money loaned, and that she was entitled to a credit upon such principal of all the sums she had paid thereon.

(2) That the appellant company was a corporation created under the laws of the State of New York, and had not established an office in this State, as required by section 1104 of the Code of 1887.

The appellants filed their demurrer and answer to her bill, and also filed a cross-bill, to which the appellee filed her demurrer and answer, and also filed an amended bill, in which she states the same grounds for relief as were stated in her original bill, though she goes much more fully into the history and the details of the negotiation which resulted in the creation of the debt to secure which the deed of trust upon her property was executed.

Upon a hearing of the cause the Circuit Court held that the transaction complained of was usurious, and that the appellant company was only entitled to recover the principal sum secured by the deed of trust, and that upon this principal must be credited all sums paid by the appellee to the appellant company, of which she was a member, whether paid by her as entrance fees, premiums, or monthly dues as a stockholder and member of such company, or paid upon the principal or interest of the debt secured, and directed an account to ascertain the actual amount of money borrowed by the appellee from the appellant company, and the amount of credits to which she was entitled thereon.   From this decree an appeal was taken by the appellants.

A great number of questions were raised and argued in the briefs and oral arguments of counsel, many of which do not arise under the pleadings in the case, or have been settled by the admissions and agreements of the parties.

One of the questions raised, and earnestly insisted upon by the appellee, to sustain her contention, was that the appellant company had never been properly organized under the laws of the State of New York, and that it had no right to exercise the extraordinary powers conferred upon it by its charter in that State, and, since it had no legal existence in the State of its domicile, it could have none here. Whatever may be the defects, if any, of its organization under the laws of New York, they cannot be inquired into in this case.

The appellee, in both her original and amended bills, makes this allegation:

"Your complainant would further show unto your honor that the National Mutual Building and Loan Association of New York is a corporation under the laws of the State of New York, and is not a resident of this State, nor has it an office in this State, as required by seciton 1104, Code Va., 1887."

In a written agreement made between the parties by their counsel, the appellee admits, among other things, that "the National Mutual Building and Loan Association of New York was duly incorporated under the laws of New York, and authorized to transact such business as was contemplated by the act of the New York legislature, which was certified to the Secretary of the Commonwealth of Virginia, but denies that it was authorized to transact any business in the State of Virginia, and also denies that it was authorized to enter into the contract under investigation, by the laws of New York."

A party who has alleged in his pleadings the existence of a fact, or expressly admitted it in the facts agreed in the case, will not be permitted in that case to question the existence of such fact. And certainly not in a case like this, where the

existence of such facts is both alleged and admitted. For the purposes of this case, the appellant company must be considered as duly incorporated under the laws of the State of New York.

The next question is, did it have the right to do business in this State?

The appellee, in her original and amended bills, claims that it did not have such right, because it did not have "an office in this State, as required by section 1104, Code Va. 1887." That section provides, among other things, that "every company incorporated under the laws of this State, or another State, and doing business in this State, shall have an office in the State at which all claims due residents of the State against such company may be audited, settled, and paid."

In the argument of the case it was contended by counsel of appellee that the appellant company had not complied with other provisions of section 1104, nor with the act of March 5, 1890, entitled "An act relating to Building and Loan Associations not incorporated in this State," and that these provisions were conditions precedent to the right of any foreign corporation to do business in this State, and that all contracts made in the State before such compliance were null and void, and could not be enforced.

In order to raise such question, it was necessary for the appellee to allege in her bill, or amended bill, the failure of the appellant company to comply with the requirements of those statutes, and also to allege in what particular it had failed to do so. It is a fundamental principle of equity pleading that every fact essential to sustain the bill, and relied upon to obtain the relief prayed for, must be stated in the bill. Story, Eq. Pl. sec. 241.

In this case the only allegation in the appellee's pleadings as to the failure of the appellant company to comply with these statutes was that contained in her original and amended

bill, in which she alleges that the appellant company had no "office in this State, as required by section 1104, Code Va. 1887." We think the investigation as to whether the appellant company had complied with the provisions of section 1104 of the Code, and of the Act of March 5, 1890, must be confined to the allegations of the appellee's bills upon that subject, viz., that the appellant company had no such office in this State as was required.

It appears from the power of attorney executed by the appellant company on the 29th day of November, 1889, and properly acknowledged and recorded in the corporation court of the city of Roanoke, that Henry Gibson was appointed agent for such company, and his office in the city of Roanoke was designated and entitled "as its proper office at which all claims due by said association to residents of the State of Virginia may be audited, settled, and paid." It thus appears clearly that the appellant company did comply with the statute requiring it to have an office in this State, and, under the pleadings in this case, was authorized to carry on its business in this State.

The next question for us to decide is whether the transaction between the appellee and appellant company was usurious.

It is contended by the appellee that the contract in question was a Virginia contract, and that it is governed by the laws of this State. The facts agreed show that the application for the loan was made at the office of the agent of the appellant company in Bristol, in the State of Tennessee, and that the contract was concluded in this State, where the appellee then lived, and that all the papers were executed and delivered in this State. The bond given by the appellee to the appellant company for the money borrowed was payable at the office of the appellant company in New York city, and all interest, monthly premiums, and monthly dues were payable on or before the last business day of every month at the same office.

When a contract is made or entered into in one State, to be performed in another, it is, as a general rule, to be governed by the laws of the place of performance, without regard to the place at which it was written, signed, or dated, in respect to its nature, interpretation, validity, and effect. 1 Daniel, Neg. Inst. sec. 865; *Andrews* v. *Pond*, 13 Pet. 65; *Coghlan* v. *Railroad Co.*, 142 U. S. 101.

It was said by Chief Justice Taney, in delivering the opinion of the court in the case of *Andrews* v. *Pond*, cited above, that "The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and, if the interest allowed by the laws of the place of performance is higher than that of the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury." 13 Pet., at page 78.

The place where the contract in question was to be performed being the State of New York, it is governed by her usury laws.

Chapter 122 of the laws New York, passed April 10, 1851, entitled "An act for the incorporation of Building, Mutual Loan and Accumulation Fund Associations," together with amendments made thereto, are properly proved and filed in the cause. Section 7 of this act, as amended by act of June 9, 1875, contains this provision: "Nor shall the imposition of fines for the non-payment of fines or fees, or other violations of the articles of association, nor shall the making of any monthly payments required by the articles of association, or of any premium for loans made to members, be deemed a violation of the provisions of any statute against usury."

It is thus expressly declared that building associations may demand and receive premiums, dues, and fines without violating the usury laws of New York; and as we understand the act of 1851, of the State of New York, as amended by chap-

ter 564 of the laws of 1875, and according to the construction placed upon it by the tribunals of that State, the contract made with the appellee is not usurious. *Concordia &c. Association* v. *Read*, 93 N. Y. 474; opinion of the Attorney General of the State of New York, printed at pages 46, 47, and 48 of the annual report of the superintendent of the banking department as to the legality of fixed premiums by building and loan associations under act of 1851, dated November 13, 1889.

The appellee is not entitled to the specific relief prayed for in her original and amended bills. But it appears that the trustee was proceeding to sell the house and lot under the deed of trust, for the satisfaction of the debt in controversy, without giving the appellee credit for the "withdrawal value" of her eight shares of stock, which the pleadings of the appellants admit she was entitled to.

Before any sale under the deed of trust should have been made, the balance of the debt secured thereby ought to have been ascertained, as any uncertainty as to the extent of the charge upon the house and lot might have prejudiced the sale. The Circuit Court ought, instead of entering the decree it did, to have directed one of its commissioners to have ascertained the balance due upon the debt secured by the deed of trust in accordance with the terms of the contract between the parties.

We are of opinion, therefore, to reverse the decree appealed from, and to enter such decree as the Circuit Court ought to have entered.

REVERSED.