# Wytheville.

NICKELS v. PEOPLE'S BUILDING, LOAN & SAVING ASSOCIATION.

July 9, 1896.

Absent, Harrison, J.

1. PLEADING—*Foreign Corporations—Compliance with State Laws—Demurrer.*—It is not necessary for a foreign corporation, in order to sustain an action in this State, to set forth in its complaint a compliance with the laws of the State which entitle it to do business in the State. This defence, if available, is a matter to be pleaded and proved by the defendant. It does not arise on demurrer.

2. FORFEITURES—*Who may rely on.*—A stockholder in a building fund association who has forfeited his stock for non-payment of dues, under such circumstances that a court of equity would not have relieved against the forfeiture at his suit, cannot insist upon the enforcement of the forfeiture to the prejudice of the company.

3. PENALTIES—*Forfeitures—Accelerating Payment of a Debt.*—A provision in a contract that, in a specified event, the time for the payment of a certain sum shall be accelerated, but not that the debt shall be increased, does not create a penalty or forfeiture against which a court of equity will relieve. The time of payment of the principal of a debt may be lawfully hastened for failure to pay instalments of interest as they mature.

4. USURY—*Place of Performance of Contract—Notice of By-laws of a Corporation*—A member of a building fund association must be presumed to have contracted with reference to its by-laws. If these provide that the place of performance shall be in another State by the laws of which the contract is made valid, though usurious in this State, and the contract is silent as to the place of performance, it will be deemed valid here. Upon the question of usury, the law of the State where the contract is to be performed controls.

Appeal from a decree of the Circuit Court of Wise county, pronounced April 19, 1894, in a suit in chancery wherein

the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*H. C. McDowell, Jr.*, for the appellant.

*Jos. L. Kelley* and *John A. Kelley*, for the appellee.

KEITH, P., delivered the opinion of the court.

The People's Building, Loan and Saving Association a corporation organized under the laws of the State of New York, filed its bill in the Circuit Court of Wise county on the 19th day of April, 1894, in which it shows that on the 10th of June, 1891, Nickels was admitted as a member of the said Association, having subscribed to fifty shares of the stock. Soon after becoming a member, he borrowed from the Association the sum of $3,000, agreeing to repay the same in monthly instalments, pursuant to the terms and conditions set forth in the bond, dated the 10th of June, 1891, payable to the plaintiff, and signed by Nickels, and in the deed of trust executed on the same day for the benefit of the plaintiff, in which certain property was conveyed by Nickels and his wife to E. A. Walton, trustee, to secure the bond. In the bond and deed of trust it is stipulated that, if default should be made in the payment of any interest or premium moneys provided for in said bond and deed of trust, and the said default should continue for a period of three months after the same shall have become payable, the whole of the principal sum thereby secured should become due, and the trust deed be liable to foreclosure.

The bill then charges that Nickels has made default in the payment of numerous instalments of premium and interest provided for; that his default has continued more than three months; that there is unpaid and owing to the plaintiff for

principal and interest the sum of $2,909.50; that Walton, trustee, declines to execute the trust imposed upon him, and that the plaintiff is therefore compelled to come into equity for the enforcement of its lien.

Nickels demurred to and answered the bill, admitting that the plaintiff is a corporation, and that it is organized under the laws of the State of New York. He denies that he ever received the sum of $3,000 from the said Association. He admits that he did receive the sum of $2,700. He denies that default has been made in the payment of the instalments stipulated and continued for more than three months prior to the institution of the suit; and denies that the sum claimed in the bill, or any other sum, was due complainant at the institution of the suit. He alleges that the contract between himself and the Association is usurious. He asks that his answer be treated as a cross-bill, and the People's Building, Loan and Saving Association shall be required to answer its allegations.

The Association demurred to and answered the cross-bill, denying all the material allegations therein contained. Thereupon proofs were taken, and the Circuit Court entered a decree in favor of the plaintiff for the sum of $2,700, with interest, subject to credits for interest and premiums paid, and providing that, unless Nickels, or some one for him, should, within sixty days from the date of the decree, pay the sum so found due, the land conveyed in the deed of trust to Walton should be sold. From this decree an appeal was allowed to Nickels by one of the judges of this court.

The first question arises upon a demurrer to the bill. It is contended upon the part of the appellant that, in order to maintain its suit, it was necessary for the plaintiff to aver a compliance with the laws of this State with reference to companies incorporated in foreign States doing business within its limits. See Code of Virginia, section 1104, and Acts of Assembly 1889–90, page 170.

It is unnecessary to enquire whether or not, under the statute cited, a contract made in this State by an insurance company, chartered under the laws of another State, which has not complied with our laws, above referred to, is void or voidable, the question lying behind that being one of pleading. Can the question be raised by a demurrer to a bill, or is it matter of defence?

Upon the part of the plaintiff it is contended that compliance with the conditions prescribed by law is a prerequisite to the right to sue in the domestic courts, and must be made affirmatively to appear.

Upon the part of the appellee it is contended, without admitting that the failure to comply with the law would at all affect the validity of the contract, that the question cannot be raised by demurrer, but is strictly a matter of defence, and the failure to comply must be made to appear by plea or answer. There is no such issue made in any of the pleadings presented in this record.

Without considering the effect of section 1104, and of the the statute found in Acts of Assembly, 1889–'90, p. 170, upon validity of the contract, we have no hesitation in deciding that it is not necessary for a foreign corporation, in order to sustain its action, to set forth in its complaint that it has complied with the laws of the State which entitle it to do business therein, but that this defence, if avalable, is a matter to be pleaded and proved by the defendant. See 6 Thomp. on Corp., sections 7965, 7979, 7980, and 7981. The demurrer was properly overruled.

The next assignment of error is that the suit was prematurely brought. As we have seen, one of the conditions of the bond, and of the deed of trust given to secure it, is that should any default be made in the payment of the principal, or any interest or premium moneys secured to be paid, and should the same remain unpaid and in arrears for the space of three months after the same shall have become payable,

then the whole principal sum, together with interest and premium thereon, should immediately become due. The suit was brought on the 19th of April, 1894, and the plaintiff avers that default had been made in the payment of the interest and premium moneys for more than the period of three months, and therefore sues for the entire sum alleged to be due by reason of that default.

Upon the part of the appellant it is claimed that there had been no default continuing for a space of three months, and the suit was prematurely instituted. The ground of the appellant's contention is that all of its premiums and dues had been paid by him to May 28, 1892; that thereupon he failed to pay his premiums and dues, as required by the by-laws, and that by reason of the failure to make the payments he had by virtue of article twelve of its articles of incorporation, forfeited his stock to the Association; that this forfeiture had become absolute, having existed from May 28, 1892, until February, 1893; that on February 13, 1893, he paid to the Association $200; on March 1, $100, and on March 18, $80, making $380; and that this sum, applied to the premium and dues, paid those which were in arrears, and left a sum to his credit with the Association sufficient to keep down interest and premiums to a period within three months prior to the institution of this suit; that therefore the default had not continued for three months when the suit was instituted.

It is a novel proposition which is here contended for. We recall no instance in which a forfeiture has been urged and insisted upon by him whose right or interest was to be divested by its enforcement. The presumption is that the continuance of his relations with the company was an advantage to the appellant, because it enabled him, by the payment of his dues, premiums, and interest to the company, to discharge all of his obligations to it, including the principal sum received by him as a loan, and it is certain that the Association would not have been permitted to rely upon an

enforcement of this forfeiture unless it could show that it had strictly complied with all the conditions upon which its rights to claim the forfeiture were made to depend; and, if at the time of the payment of the several sums of money referred to, it had appeared that the forfeiture had not been declared, that the money had been received by the company, it would have been applied to the relief of the appellant, and to the exoneration of his shares from the penalty incurred by his failure regularly to meet his dues. There was no application made of these several sums of money to any particular debt or demand on the part of the appellant, and it is conceded that the Association had the right to apply these payments thus unappropriated to any existing obligation. The contention is that, the stock being forfeited, there was no obligation save the payment of premium and dues, and that therefore the payments were necessarily to be applied to their extinguishment. This position is not tenable, unless at the time the payments were made the conditions were such that a court of equity would not have relieved against the forfeiture at the suit of the appellant. The shares of stocks still stood upon the books in the name of the original holder. There had been no act or declaration made indicating a purpose upon the part of the company to enforce the penalty denounced for the failure promptly to meet its demands upon the appellant. Upon the receipt of the money, it appears that it was placed to the credit of the appellant in liquidation of all the demands then existing against him, including interest, premium, and dues, and when so applied, the sum was insufficient to keep down future instalments, so that when the suit was brought there were arrearages of interest and premiums which had continued for more than three months, and the condition had occurred upon which, by the terms of the contract, the whole debt, principal and interest, became due and payable. Under such circumstances a court of equity would have re-

lieved against the forfeiture had the Association sought to enforce it, and the appellant cannot be permitted to occupy the anomalous position of demanding its imposition in order to meet the present exigencies of his case. So that this assignment of error is not well taken.

It is further contended upon the part of the appellant that a provision in a contract that the principal and interest shall become due upon failure to pay instalments of interest, is a penalty or forfeiture against which a court of equity will relieve, but such is not the modern doctrine on this subject.

In the case of *Concordia Savings & Aid Ass.* v. *Read*, 93 N. Y. 479, there was a similar provision, and the court said: " This is not a case where a larger sum is made payable in consequence of the non-payment of a smaller sum, and payment of a larger sum is not imposed as a penalty. But this is a case where the whole of the specified sum becomes due because the partial payments are not made as stipulated, and the principles of law which authorize courts of equity sometimes to relieve from forfeitures do not apply to such a case as this."

A provision in a contract, not that the amount of the debt shall be increased, but that in a specified event the time for the payment of a certain sum due shall be accelerated, does not create a penalty or forfeiture against which a court of equity will relieve. " It is settled, therefore, by the overwhelming weight of authority, that if a certain sum is due and secured by a bond, or bond and mortgage, or other form of obligation, and is made payable at some future day specified, with interest thereon made payable during the interval at fixed times annually, or semi-annually, or monthly, and a further stipulation provides that in case default should occur in the prompt payment of any such portion of interest at the time agreed upon, then the entire principal sum of the debt should at once become payable, and payment thereof

could be enforced by the creditor, such a stipulation is not in the nature of a penalty, but will be sustained in equity as well as at law." 1 Pom. Eq. Jur., sec. 439. We think, therefore, that this assignment of error is not well taken.

It is further contended upon the part of the appellant that the contract and dealings between the appellant and the appellee, disclosed in the record, were usurious. There is nothing upon the face of the deed of trust or of the bond to indicate that the contract between the parties under investigation was a domestic contract. The appellant resides in Virginia. The appellee is a New York corporation doing business in Virginia. The money was paid to the appellant in this State, and was to be expended in the improvement of real estate situated in Virginia. If there was nothing more, it would be considered a domestic contract, but it appears by reference to article 16 of the by-laws of the Association that " all remittances for admission, monthly and quarterly instalments, fines, penalties, interest and premiums, and all other payments shall be made to the secretary of the Association at their principal office, in Geneva, N. Y." All the payments, therefore, under this contract were to be made in New York by the terms of the laws of this Association, of which the appellant was a member. He knew, or had, as appears from his own deposition, the means of acquainting himself with this by-law. As a member of the Association, he must be taken to have contracted with reference to it, and, in addition to this the parties were entering into a contract lawful in New York, but usurious in Virginia. The presumption in such cases is, not only that they contracted with reference to the laws of that State in which the contract was made payable, but with reference to the laws of that State which recognized the legality of the contract entered into.

As was said in *National Building, &c. Association* v. *Ashworth*, 91 Va. 706, 712: " When a contract is made or entered into

in one State, to be performed in another, it is, as a general rule, to be governed by the laws of the place of performance, without regard to the place at which it was written, signed, or dated, in respect to its nature, interpretation, validity, and effect."

"The general principle," said Chief Justice Taney, in *Andrews* v. *Pond*, 13 Peters 65, "in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the laws of the place of performance is higher than that of the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury."

The place where the contract under investigation was to be performed being the State of New York, it is governed by her usury laws. As appears from the proofs in this case, and from the opinion of this court in *National Building, &c. Association* v. *Ashworth,* cited above, it is not usurious, according to the laws of New York, for building associations to demand and receive premiums, dues, and fines, although in excess of the lawful rate of interest. While we are, therefore, of opinion that this contract is unwise and improvident, that its operation is harsh and oppressive, yet, so long as foreign corporations are authorized by the States which create them to make such contracts, and are permitted by this State to do business within its borders, the courts have no choice but to enforce them.

We have been unable to discover any error to the prejudice of the appellant. Indeed, the decree of the court below has so tempered the relief accorded to the appellee, that the appellant has been required to do little, if anything, more than in equity and conscience he should have been willing to do, and the appellee upon its part having expressly waived its cross-appeal, the decree complained of is affirmed.

*Affirmed.*