## BROWER v. LIFE INS. CO. OF VIRGINIA.

(Circuit Court, W. D. North Carolina. April 29, 1898.)

1. USURY—WHAT LAW GOVERNS.
    When a citizen of North Carolina borrows money of a Virginia corporation, promising to repay the principal sum at the home office in Virginia, the question whether the contract is usurious must be determined by the Virginia law, though the loan is secured by a mortgage on North Carolina lands.

2. SAME.
    Where one borrowing money from a life insurance company takes from it, as a condition of making the loan, an endowment policy, and assigns it to the company, contracting to make monthly payments thereon, sufficient in the end to extinguish the loan, but in the meantime to pay interest on the whole amount of the loan at the full legal rate, the transaction is usurious under the laws of Virginia.

A. E. Holton, for plaintiff.
MacRae & Day, for defendant.

SIMONTON, Circuit Judge. The plaintiff instituted his proceedings in the state court of North Carolina. They have been removed into this court. The facts of this case are these:

The Life Insurance Company of Virginia is a corporation of the state of Virginia. Besides being engaged in the business of life insurance, it is authorized by its charter to lend its surplus profits on mortgages or loans of real estate. For many years it has been engaged in making such loans. Under its fixed rules, no loans are made except to persons who hold policies in the company, either life policies or endowment policies. The plaintiff, John M. Brower, a citizen of the state of North Carolina, resident at Mt. Airy, in that state, desiring to improve certain real estate in that town, wished to borrow the sum of $5,000. He made application to Mr. Carter, an attorney at law, at Mt. Airy, who examined titles for the company, to effect a loan for him. Carter explained to him the rule of the

company, limiting its loans to policy holders; and Brower quali-fied himself by subscribing to three endowment policies in the Life In-surance Company of Virginia, one for $1,000, and two for $2,000 each. He then made application for a loan of $5,000 for the term of seven years, interest 6 per cent. per annum, payable monthly, on the last Sat-urday of each month, at such place as lender may direct, the loan to be secured by mortgage of real estate. The original application for $5,000 was withdrawn, and three separate applications of the same kind were made,—one for $1,000, and two for $2,000 each. The real es-tate of Brower which he wished to improve was in three separate par-cels, and this division of the sum needed was made for convenience. The application was granted. The insurance company furnished Brower $1,000, and took his bond in the penal sum of $2,000, of which this is a copy:

"Know all men by these presents, that I, John M. Brower, of Mount Airy, in the county of Surry and state of North Carolina, am held and firmly bound unto the Life Insurance Company of Virginia in the sum of two thousand dollars, to be paid to said company, its successors or assigns, at its home office in Richmond, Virginia, to which payment well and truly to be made I bind my-self, my heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with my seal, and dated at Mount Airy, N. C., this 21st day of January, one thousand eight hundred and ninety-three.

"The condition of this obligation is such that whereas, the said John M. Brower has made application to said the Life Insurance Company of Virginia for the advancement to him by said company of one thousand dollars, by way of antici-pation of the value, at its maturity, of an endowment of one thousand dollars, evidenced by a certain certificate or policy No. 3,211, issued by said company to said John M. Brower; and whereas, said company has advanced to said John M. Brower the sum of one thousand dollars by way of said anticipation: Now, therefore, if the above-bounden John M. Brower, his heirs, executors, and administrators, or any of them, shall pay or cause to be paid unto said com-pany, its successors or assigns, the just sum of one thousand dollars, seven years from the 28th day of January, A. D. 1893 (or at and upon the maturity of the endowment set forth and provided for in said certificate or policy, if that shall sooner happen), together with interest thereof during said period and until paid, at the rate of six per cent. per annum from the date last mentioned, payable monthly on the last Saturday of each and every month, and shall also pay or cause to be paid unto said company, its successors or assigns, the sum of twelve ($12.00) dollars, on the 28th day of January, A. D. 1893, and on the last Saturday of each and every month thereafter, as and for the monthly pay-ments or installments on said endowment, the certificate or policy of which endowment the said John M. Brower hereby assigns, transfers, and sets over unto said company as security for the faithful performance of this bond, and shall also pay or cause to be paid all fines which become due thereon, and shall also pay or cause to be paid all taxes and assessments on the property con-veyed in the deed of trust given to secure this bond, and also all premiums on the policy or policies of fire insurance assigned to said company as additional security, until the maturity of the said endowment, then the above obligation to be void; otherwise, to remain in full force and virtue: provided, however, and it is hereby expressly agreed, that if at any time default shall be made in the payment of said interest or of the said monthly payments or installments on said certificate or policy, or of said fines, if any shall have become due, for the period of six months after the same or any part thereof shall have become due, or if the taxes and assessments on the property conveyed in the deed of trust given to secure the faithful performance of this bond be not paid when due, or if the insurance policy or policies on the said property be allowed to expire without renewal, or if the premiums thereon be not paid when due, then, and in either or any such case, the whole principal sum aforesaid shall, at the election of said company, its successors or assigns, immediately thereupon be-

come due and payable, and payment of said principal sum, together with all monthly payments, interest, and fines then due, and all costs and disbursements, including said taxes, assessments, and insurance which shall have been paid by said company, may be enforced and recovered at once, either by foreclosure of the deed of trust given to secure this bond or otherwise, anything hereinbefore contained to the contrary notwithstanding: and provided, further, that payment of said principal sum shall be made to the said the Life Insurance Company of Virginia at its home office in the city of Richmond, Va., and all other sums herein provided for may be paid at said home office, or to the duly-authorized local treasurer of said company at his office in Mount Airy, N. C.: and provided, further, that nothing herein contained shall operate to impair or suspend the right of said the Life Insurance Company of Virginia to enforce the payment and recovery of said principal sum, either by foreclosure of the deed of trust given to secure this bond or otherwise, at once upon default being made in the payment of said principal sum, when the same shall become due and demandable according to the terms of this bond.

"Witness: W. F. Carter.                              John M. Brower. [Seal.]"

To secure this bond, he and his wife executed a deed of trust to J. W. Ashby and W. F. Carter, as trustees, covering a lot of land at Mt. Airy, with power of sale in case of default in any of the covenants in the deed.    Afterwards another loan of $2,000 was made, secured by the same sort of bond, and by a similar deed of trust to the same trustees, covering another lot in the town of Mt. Airy.    The last $2,000 was never loaned, because Brower had begun to make default on the preceding loans.    The third endowment policy was surrendered, the company paying him $116.    On this had been paid $140.    Default having been made on the two deeds of trust, the Life Insurance Company of Virginia threatened action under them, and Brower filed his complaint, charging the whole transaction as usurious, and praying an injunction.    The cause comes into this court, and, an answer having been filed and testimony taken, is now heard on the merits.

The following is a copy of the endowment policy:

"The Endowment Fund of the Life Insurance Company of Virginia.

"No. 3,211.                    Richmond, Virginia.                    10 Shares.

"Amount, $1,000.00.

"This certifies that John M. Brower, of Mount Airy, county of Surry, state of North Carolina, has subscribed for, and is the owner of, ten shares, of one hundred dollars each, in the endowment fund of the Life Insurance Company of Virginia; and that in consideration of the monthly payment of one dollar and twenty cents per share hereof to be made on the last Saturday of each month beginning on the 20th day of January, 1893, the Life Insurance Company of Virginia doth hereby promise and agree to pay to the holder herein named the sum of one hundred dollars for each share hereof, seven years after the 28th day of January, 1893, subject to the conditions named on the back hereof, which are hereby referred to and made a part hereof.

"In witness whereof, the said the Life Insurance Company of Virginia hath, by its president and secretary, signed and delivered this instrument at Richmond, Virginia, this 20th day of January, 1893.

                                        "Jas. W. Pegram, Secretary.
                                        "G. A. Walker, President."

There are two questions in this case.    One is, is this a usurious contract?    The other is, by the law of which state, Virginia, or North Carolina, must this be determined?    The last question may be first met.

The contract expressly provides that the payment of the principal sum must be made at the home office, at Richmond, Va.    No express

provision is made as to the place for the payment of interest. For convenience sake, no doubt, it could be paid either to the agent in North Carolina or at the home office in Virginia. It is an established rule of law that the performance of contracts is to be governed by the law of the place of performance, and, if the interest allowed by the place of performance is higher than that at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury. Miller v. Tiffany, 1 Wall. 310. This is the law also in North Carolina, as laid down by Ruffin, C. J., in Arrington v. Gee, 27 N. C. 594, and by Pearson, C. J., in Roberts v. McNeely, 52 N. C. 506. And also by the courts of Virginia the same doctrine is established. Nickels v. Association, 93 Va. 387, 25 S. E. 8. Nor is this rule affected by the fact that this loan is secured by a mortgage of realty in another state. Campion v. Kille, 14 N. J. Eq. 229; De Wolf v. Johnson, 10 Wheat. 377; Story, Confl. Laws, §§ 287, 293, 303. So, it must follow that, in deciding whether this contract be usurious or not, it must be discussed in the light of the Virginia statute on the subject. If there be any authoritative decision of the supreme court of that state construing such statute, it must be followed by this court. There is, so far as the research of counsel or of the court can ascertain, no case passing precisely on this question. It must therefore be discussed in the light of the general law.

Is the transaction in question tainted with usury? The rate of interest in Virginia is 6 per cent. per annum. That of North Carolina 8 per cent. per annum. The requisites to form a usurious transaction are: (1) A loan, either express or implied; (2) an understanding that the money lent shall or may be returned; (3) that a greater rate of interest than is allowed by statute shall be paid. Lloyd v. Scott, 4 Pet. 205.

Chief Justice Gaston, of North Carolina, in his own luminous way, expresses it thus:

"To constitute a loan usury, it is necessary that there should be an agreement between the parties for the lender to take a greater profit by way of discount or interest on the amount loaned than after the rate of six dollars for the forbearance of one hundred dollars for one year. It signifies not in what shape the agreed profit upon the money lent is to accrue. It is sufficient that such profit should exceed the legal rate in order to bring the transaction within the statute. It is also wholly unimportant in what form, by what device, or under what pretense this reservation of unlawful profit be made, if, according to the agreement of the parties, it is designed as a profit upon the sum advanced."

He adds:

"The hope or confident expectation of some collateral benefit from making the loan does not necessarily show a corrupt agreement to take exorbitant interest." Shober v. Hauser, 20 N. C. 91.

See, also, Bank v. Owens, 2 Pet. 527; Lloyd v. Scott, supra.

Let the transaction in the case at bar be analyzed and examined in the light of this clear exposition of the law. There are two contracts made almost contemporaneously, and in great measure the one, the loan, dependent on the other, the policy. The loan was secured by a bond, providing for the payment of interest at the rate

of 6 per cent. per annum, payable monthly, on the principal, for the period of seven years. This is not in itself usurious, notwithstanding the short period in which increments of interest fall due. Meyer v. City of Muscatine, 1 Wall. 384, 391. The bond is also conditioned for the prompt payment of the installments on the endowment policy. Does this make the transaction usurious? What is the practical operation of this arrangement? The borrower gives his bond, say, for $1,000, bearing interest at 6 per cent. per annum, payable monthly, secured by a mortgage of real estate. He also, as a part of the contract,—a condition precedent to the loan,—takes out an endowment policy for a certain number of shares, each valued at $100, on which he agrees to pay $1.20 per share each month, and, under the terms of the loan, at once assigns this policy to the lender. These monthly installments go into the hands of the lender, and, by the hypothecation, are the property of the lender, and so remain until the debt is matured, and are then, in the aggregate, applied to the debt. If they be discontinued, apparently all of the installments will be forfeited. So, the lender on a loan of $1,000 gets each month, towards the ultimate payment of the sum loaned, $12, and yet simultaneously with each of the said installments gets interest monthly on the whole sum loaned. Thus, if the contract be carried out, at the end of three years and a half, 42 months, the lender will have in hand, applicable to his loan of $1,000, the sum of $504; and yet it will be receiving at the same time from the borrower at the rate of 6 per cent. per annum upon the whole sum lent. Evidently, under this practical operation of the contract, the lender gets more than the legal rate of interest on his loan. To put it in another form: The loan is for $1,000. Two classes of securities are placed in the hands of the lender, both inseparably connected and parts of the same transaction. By the one,—the mortgage,—he is secured the full interest on his loan for seven years. By the other, he is placed monthly in possession of funds which gradually extinguish the amount loaned. At the end of the seventh year the lender will get full interest on the original loan, and will have in hand an aggregate of installments equal to the amount of the original loan,—his property by hypothecation. If he lends $1,000, and gets each month $12 on the policy, he will have received in 84 months (7 years) $1,048. In Insurance Co. v. Kittle, 2 Fed. 113, there is a transaction very similar to this, which McCrary, circuit judge, with the concurrence of Mr. Justice Miller, held usurious. In that case the policy concurrent with the loan was a life policy, under which the borrower certainly obtained a valuable protection, for his death pending the loan will pay it in full. In this case the borrower is given only an easy and convenient way of depositing with the lender his installments for the payment of his debt, and has no contingent advantage, even if he die before the debt has matured. In Miller v. Insurance Co., 118 N. C. 612, 24 S. E. 484, a transaction in all respects like this was declared usurious.

It is not the question whether the defendant corruptly, by trick or design, obtained a larger rate of interest than 6 per cent. per annum. This is the language of the Virginia Code:

"Sec. 2817. **Legal Rate of** Interest. Legal interest shall continue to be at the rate of six dollars upon one hundred dollars for a year, and proportionately for a greater or less sum, or for a longer or shorter time; and no person upon any contract shall take for the loan or forbearance of money or other thing above the value of such rate.

"Sec. 2818. **Contracts, &c., for More, Illegal.** All contracts and assurances made, directly or indirectly, for the loan or forbearance of money or other thing, at a greater rate of interest than is allowed by the preceding section, shall be deemed to be an illegal consideration as to the excess beyond the principal amount so loaned or forborne."

It appears from what has been said that, under this contract of loan, the defendant, the Life Insurance Company of Virginia, reaps a larger profit on the loan of its money than at the rate of 6 per cent. per annum, and that the transaction is usurious.

The complainant also seeks damages because the defendant did not lend the last $2,000 of the $5,000 asked for. The report of the standing master on this point is confirmed. He saw no evidence to sustain the claim. It seems somewhat an inconsistent position on the part of the complainant to attack the loan because it is usurious, and then to seek damages because it was not made. Considering the whole case, it is ordered that the account between the parties be restated on these principles. Let the plaintiff be charged with the loan of $3,000, which has been made, with interest thereon at the rate of 6 per cent. per annum payable monthly, and be credited with all sums paid for this interest, and also with all sums paid on the endowment policies, interest on these last-named sums to be allowed at the rate of 6 per cent. per annum from the several days of payment. For the balance thus ascertained, the complainant must make payment to the defendant; and, failing therein, the lands covered by the deeds of trust must be sold by the standing master for the purpose of satisfying the same. The case will be recommitted to the standing master, to restate the account; or, if the parties can agree upon a proper statement, so much of this reference can be dispensed with, and a decretal order can be prepared providing for the time and place and terms of sale; costs to be paid by defendant.