# Staunton.

## Middle States Loan, Building and Construction Company

### v.

### Miller's Administrator.

#### September 21, 1905.

1. Conflict of Laws—*Place of Performance—Building Association.*— Where the by-laws of a non-resident Building Association provide that all dues from members shall be payable at the home office of the company, which is outside of this State, a contract by a member for a loan, which is silent as to the place of payment, is a foreign contract, and is governed by the laws of the State in which the home office is located as to its validity, interpretation and effect.

2. Building Associations—*Borrowing Member—Usury—Foreign Law.*— A contract of a borrowing member of Building Association to pay six *per cent.* interest on the money borrowed during the continuance of the loan, and the taxes and insurance premiums on the property conveyed to secure the repayment of the loan, in addition to what he undertook to pay as a stockholder to mature his stock, is not usurious under the laws of Maryland, where the dues are payable; and the contract will be upheld in this State when its enforcement is sought here.

3. Building Associations—*Borrowing Member—Withdrawal—Mode of Settlement—Foreign Law—Enforcement Here.*—Under the laws of Maryland, which, in this case, will be enforced in this State, the amount due on the contract in suit (which is a bond given to a Building Association by a borrowing member who has since died) is to be ascertained by charging the estate of the borrowing member with the amount of the loan to him as of its date, and interest at six *per cent.*, and crediting his estate with all sums paid on the loan as of the dates of payment, whether principal or interest, and thus ascertain the balance due on the loan at the time of borrower's death. Upon this sum there should be credited the with-

drawal value of the borrower's shares of stock at the time of his death, ascertained according to the by-laws of the company, then in force for determining the withdrawal value of the stock of a borrowing member who pays back a loan in advance of the maturity of his stock. For the balance thus ascertained, with interest thereon from the time of borrower's death, and unpaid fines assessed against him in his lifetime, and the taxes paid by the company on the trust property, with interest thereon from date of payment, the company is entitled to a decree.

Appeal from a decree of the Circuit Court of Rockingham county, in the chancery suit of *Miller's Adm'r v. Miller's Heirs,* wherein appellant asserted a debt. There was a decree fixing the amount of appellant's debt at a less sum than it deemed it was entitled to, and from that decree this appeal was taken.

*Reversed.*

The bond in the suit, which is set out in the opinion of the court, fixes no place of payment, but sec. 6 of art. IV of the by-laws of appellant company declares that "all money due from members to the company . . . shall be payable at the home office in Hagerstown, Md." The other facts sufficiently appear in the opinion of the court.

*Conrad & Conrad,* for the appellant.

*Sipe v. Harris,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

In June, 1891, J. G. H. Miller, of Rockingham county, became a member of the Middle States Loan, Building and Construction Company, of Hagerstown, Maryland. In October of that year, he borrowed from the company three thousand dollars, a sum equal to one-half the face value of the sixty shares of stock for which he was then a subscriber. At the time the loan was made he and his surety executed a bond in the following words:
"Know all men by these presents: That we, J. G. H. Miller

and S. P. H. Miller of Rockingham county, and State of Virginia, are indebted unto the Middle States Loan and Construction Company, of Hagerstown, Maryland, in the sum of three thousand dollars, being the amount of a loan this day received by J. G. H. Miller from said company, with interest thereon from this date, payable monthly.

"Now the condition of the above obligation is such that if J. G. H. Miller and S. P. H. Miller or either of them shall pay the interest monthly on said sum of three thousand dollars received by J. G. H. Miller as aforesaid and shall make the monthly payments monthly on sixty shares of stock of said company subscribed for by J. G. H. Miller in said company, and any and all fines assessed against J. G. H. Miller's sixty said shares of stock, and shall likewise pay, when due, the taxes against the property conveyed by deed of trust to secure the payment of said loan of $3,000.00, and the premiums necessary to keep the buildings on said property insured from loss by fire, in such sum as the said company may require (not exceeding $——) until the said stock subscribed by J. G. H. Miller as aforesaid becomes fully paid in and of the value of one hundred dollars per share, then it is understood that upon the surrender of said stock to said company, this obligation shall be deemed fully paid and cancelled. But if J. G. H. Miller or S. P. H. Miller fails to pay when due and payable the said taxes and insurance premiums, or make default in the payment of said monthly interest, fines, and monthly payments on said stock for a period of six months after the same are or any installment thereof is due, then, at the option of said company, the whole indebtedness evidenced by this obligation (including any taxes and insurance premiums due or paid by said company) shall at once become and be due and collectable.

"Witness our hands and seals this 6th day of October, 1891.".

To secure the payment of this bond Miller executed a deed of trust on certain real estate. He made payments from time to time on the dues payable on his stock, on fines assessed against

him, and upon the interest and principal of the loan.  On June 9, 1899, he died.  Within a short time after his death his personal representative instituted a suit to have his estate administered under the direction of the court.  In that case the company asserted its bond against Miller's estate, claiming that there was due it, after all proper credits had been allowed, the sum of $2,602.59, as of August 21, 1899.

After several references, the commissioner to whom the matter was referred reported the amount due the company to be $596.40 as of April 2, 1904, of which sum $415.15 was principal.  This report was confirmed by the court.  From that decree the company applied for and obtained this appeal.

Several errors are assigned, but they only involve two questions—one whether the court erred in holding that the contract was a Maryland contract, and was governed by the laws of that State, and the other whether the court erred in ascertaining the true balance due the company from Miller's estate.

Under the decisions of this court in the cases of *Building Asso.* v. *Ashworth,* 91 Va. 706, 22 S. E. 521; *Nickols* v. *Peoples Asso.,* 93 Va. 380, 25 S. E. 8; and *Ware* v. *Bankers, &c. Co.,* 95 Va. 680, 29 S. E. 744, 64 Am. St. Rep. 826, upon the facts of this case, it is clear that the contract in question must be treated as a Maryland contract, and be governed by the laws of that State as to its validity, interpretation, and effect, and that the Circuit Court did not err in so holding.

Treating the contract as a Maryland contract, was the method adopted in the Circuit Court for ascertaining the balance due the appellant company correct?

While the laws of the State of Maryland, which are to guide this court in passing upon the contract in question, have not been proved in the usual manner, counsel on both sides cite us to and rely upon decisions of the Supreme Court of the State of Maryland as furnishing the law by which the validity and effect of the contract is to be determined, and this seems to have been the course pursued in the Circuit Court.

The commissioner who made the final report upon the appellant company's claim, which was confirmed by the Circuit Court, was of opinion that under the decision of the Supreme Court of Maryland in the case of *White* v. *Williams,* reported in 45 Atl. Rep. 1001, the contract under consideration was usurious, and treating it as such ascertained the balance due the appellant company in accordance with the rule adopted in that case, as he construed that decision. ·

There is a marked difference between the contract construed in that case and the contract under consideration.  By the terms of the former, the borrowing member was not only required to pay to his company, the Baltimore Building and Loan Association, the monthly dues as they accrued on his stock and such fines and penalities as might be assessed against him under the by-laws of the association, and six *per cent.* interest on the money borrowed by or advanced to him, but he was also required to pay, during the continuance of the loan, a premium of $7.50 monthly. . This charge of $7.50 per month in addition to the charge of legal interest on the money advanced it was held could not be sustained as premium, and that it was "simply something to be paid for the advance or loan of money in excess of legal interest, which is usury."

The contract involved in this case only requires the borrowing member to pay six *per cent.* interest on the money borrowed by him during the continuance of the loan, and the taxes and insurance premiums on the property conveyed to secure the repayment of the loan, in addition to what he undertook to pay when he became a member of the company and which he was bound to pay to mature his stock although he never became a borrowing member.  Such a contract is not usurious under the laws of the State of Maryland, as we understand the decision of the Supreme Court of Maryland in the case of *Middle States Loan, Building & Construction Co.* (the appellant) v. *Hagerstown Matress, &c. Co.,* reported in 33 Atl. Rep. 886-889, in

which it construed a contract of the same building association containing substantially if not identically the same provisions as the contract construed in this case, so far as they affect the question now under consideration.

The borrower in that case desired to take advantage of the provisions of sec. 5, art. 6, of the by-laws of the association, which gave him the right to repay the loan at any time after giving thirty days' notice. The notice was given, but, a controversy having arisen as to the amount necessary for the repayment of the loan, he instituted suit to have that question determined. In ascertaining what amount was still due from the borrower, the court said: "A borrower can never, in this State, be required to pay in satisfaction of an ordinary loan more than the principal and six *per cent.* interest *per annum* thereon. Therefore, if this amount should be paid by the mortgagor in this case, the debt would be discharged. But the mortgagor is not only a debtor, but is also a stockholder in the building company; and after the payment of the debt it would still be a stockholder and would still have all the rights and be liable to all the obligations attached to the ownership of stock. By the by-laws it would have the right to withdraw its stock, according to certain terms, which will be hereafter explained. Although not stated in so many words, it is evident that it is the purpose of the mortgagor to settle and conclude all its business with the mortgagee, and to dissolve all connection between them. It is proper to settle in this suit all questions between the parties growing out of their dealings with each other on the subject of this loan. We must, therefore, determine what amount the mortgagor is bound to pay to the mortgagee, and what amount he is entitled to receive on the withdrawal value of its shares." After discussing certain provisions of the by-laws for ascertaining the withdrawal value of stock, the court reached the conclusion that "the mortgagor must be charged with the loan of $5,000, with interest thereon down to the filing of the bill of complaint; and it is to be credited with its payments into the

lóan found, to-wit: 50 cents a month on each of its shares, with interest on each payment from the time it was made down to the institution of this suit. For the amount thus ascertained to be due the mortgagee is entitled to a decree with interest thereon until paid."

While the borrowing member in that case was a corporation and a going concern and voluntarily offered to repay the money borrowed, and in this case the borrowing member is dead, his personal representative is entitled to all the advantages the decedent would have had upon a voluntary withdrawal, or upon his paying back in advance of the stipulated time the money loaned him. Endlich on Bld'g Asso. (2nd Ed.), secs. 57 and 148; *Hansel* v. *International, &c., Co.* (Tex. Sup.), 20 S. W. Rep. 116.

We are of opinion, therefore, that the proper method of ascertaining the balance due from Miller's estate on the claim asserted against it by the appellant company is to charge Miller's estate with the amount of the loan as of the 6th day of October, 1891, and six *per cent.* interest, and to credit his estate with all sums paid on the loan as of the date of such payments, whether of principal or interest, and thus ascertain the balance due on the loan at the time of Miller's death. Then to credit upon that sum the withdrawal value of Miller's shares of stock at the time of his death, ascertained in accordance with the by-laws of the company in force at the time of his death for determining the withdrawal value of the stock of a borrowing member who pays back in advance of the maturity of his stock the money loaned him. For the amount thus ascertained to be due on the loan, with interest thereon from the time of Miller's death until paid, the fines assessed against him during his lifetime remaining unpaid, and the taxes paid by the appellant on the trust property with interest thereon from the date of payment until paid, the appellant will be entitled to a decree.

The decree appealed from must be reversed, and the cause remanded for further proceedings, to be had in accordance with the views expressed in this opinion.

*Reversed.*