## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## POOLE V. PERKINS.

### November 20, 1919.

1. CONFLICT OF LAWS—*Contracts—Law of Place of Performance.*—
   It is a general rule that every contract, as to its validity, na-
   ture, interpretation and effect, or, as they may be called, the
   right, in contradistinction to the remedy, is governed by the law
   of the place where it is made, unless it is to be performed in
   another place; and then it is governed by the law of the place
   where it is to be performed.

2. CONFLICT OF LAWS—*Contracts—Capacity of Parties.*—The law
   which is to govern in relation to the capacity of parties to enter
   into a contract is much disputed by the continental jurists of
   Europe. In general, however, they hold that the law of the
   party's domicile ought to govern. But the doctrine of the com-
   mon law is well established, both in England and America,
   that the capacity of parties to contract is with some few ex-
   ceptions determined by the *lex loci contractus*—that is, the
   law of the place with reference to which the contract is made,
   which is usually the place where it is made, unless it is to be
   performed in another place or country, and then the law of
   that country.

3. CONFLICT OF LAWS—*Contracts—Capacity of Married Women.*—
   The disability of coverture arising from the law of the mar-
   ried woman's domicile does not follow her into other States,
   and that if she goes into another State than that of her domi-
   cile, and makes a contract valid by and to be performed in ac-
   cordance with the laws of such other State, she will be bound
   thereby, even though she would not have been competent to
   make the contract according to the laws of her own State. In
   such a case the law of the place where the contract is made will
   be enforced wherever the suit is brought, even in the State of
   her domicile, subject only to the exception that, if the suit is
   brought in a jurisdiction whose law imposes upon married
   women a total incapacity to bind themselves by any contract
   whatever, then perhaps for reasons of public policy the con-
   tract will not be enforced.

4. CONFLICT OF LAWS—*Contracts—Capacity of Married Women.*—
The actual bodily presence of the contracting party is not neces-
sary to make the contract valid according to the laws of some
other State than that of the domicile, if it is the State in which
the contract is to be performed. If, for example, a married
woman makes a note in a State where the contracts of married
women are voidable, payable at a bank in Virginia, and delivers
the note to the payee, by mailing or sending it to him in Vir-
ginia, then she is bound in accordance with the laws of the
State of Virginia as fully as if she had actually crossed the
State line and signed and delivered the note in that jurisdic-
tion.

5. CONFLICT OF LAWS—*Contracts—Intention of Parties.*—When
parties make contracts which upon their face are to be dis-
charged in a State other than that in which they are executed,
they are presumed, in the absence of anything to the contrary,
to have intended the law of the State of performance, the *lex
loci solutionis*, to control, and as the true criterion as to the
proper or governing law is to be found in the intention of the
parties, the law of the place of performance controls, and ac-
cordingly determines the question of the capacity to make
a contract.

6. CONFLICT OF LAWS—*Bills, Notes and Checks—Capacity of Mar-
ried Women—Case at Bar.*—In the instant case, a married
woman executed with her husband a joint promissory nego-
tiable note. The married woman and her husband and the
payee were domiciled in the city of Bristol, Tenn. At the
time of the execution of the note, but prior to the institution
of suit, all of the parties became and remained domiciled in
Virginia. The note was dated, signed, and delivered in Ten-
nessee, but upon its face was payable at a bank in the city of
Bristol, Va.

*Held:* That the note sued upon must be construed as having
been executed with reference to the laws of the State of Vir-
ginia; that it became to all legal intents and purposes, so far
as its validity was concerned, as truly a Virginia note as if
it had been signed and delivered in that State; that by the
laws of Virginia a married woman could have legally executed
the same.

Error to a judgment of the Circuit Court of Wythe
county, in a proceeding by motion for a judgment for
money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. B. Kegley,* for the plaintiff in error.

*Robert Sayers* and *S. B. Campbell,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

On January 1, 1912, W. T. Poole and his wife F. D. Poole executed a joint promissory negotiable note to the order of Marvin Perkins. Poole and wife and Perkins at that time resided and were domiciled in the city of Bristol, Tennessee. More than a year after the execution of the note, but prior to the institution of this suit, all of the parties, makers and payee, became and have since remained residents of and domiciled in Virginia. The note was dated, signed and delivered in Tennessee, but upon its face was payable at a bank in the city of Bristol, Virginia.

According to the laws of the State of Tennessee in force at the time of the execution and delivery of the note, and for some time thereafter, the contracts of a married woman were voidable and could not be enforced against her where there was a plea of coverture, but at the time of the institution of this suit the disability of coverture had been removed by statute in Tennessee so far as concerns the contracts of married women subsequent to the passage of the statute. This is a proceeding by notice of motion brought by Perkins against Mrs. F. D. Poole in the Circuit Court of Wythe county to recover judgment on the note. All matters of law and fact having been submitted to the court without the intervention of a jury, a judgment was rendered against her, and she thereupon obtained this writ of error.

There were other issues in the lower court, but the sole question before us is whether Mrs. Poole's common law disability of coverture at the time of the execution of the note can be successfully relied upon by her as a defense.

If the note had been made payable in Tennessee, it is clear that her plea of coverture would have been good. The reason and authority for this proposition are perfectly familiar and require no elaboration or citation. If the obligation can be enforced against her at all, it is because the note was payable in Virginia. Does the fact that it was so payable enable us to apply the law of this State in determining her capacity to make the contract? If so, it is conceded that she was liable, and that the judgment complained of is right.

It would be idle to say that the question is free from difficulty. There are substantial reasons for a difference of legal opinion and the authorities upon the subject are by no means in harmony. The exact question has never been decided in this State. It would be impossible in an opinion of reasonable length to review all of the authorities bearing upon the subject, and it would perhaps be unprofitable to do so if such a thing were feasible.

[1] In the case of *Freeman's Bank* v. *Ruckman*, 16 Gratt. (57 Va.) 126, Judge Moncure announced the following general rule upon which there is practically no conflict of opinion: "It is a general rule that every contract as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another place, and then it is governed by the law of the place where it is to be performed."

This familiar and well settled rule, however, cannot be said to be conclusive of the instant case because as the

same was applied by Judge Moncure, and as most commonly illustrated by decided cases, it does not relate specifically to the *capacity of the parties to make a contract,* but to the validity and effect of a contract made by concededly competent parties.

Prof. Raleigh C. Minor, in his excellent "Conflict of Laws," says at page 410: "The only law that can operate to create a contract is the law of the place where the contract is entered into (*lex celebrationis*). If the parties enter into an agreement in a particular State the law of that State alone can determine whether a contract has been made. If by the law of that State no contract has been made, there is no contract. Hence, if by the *lex celebrationis* the parties are incapable of making a binding contract there is no contract upon which the law of any other State can operate. It is void *ab initio*."

And the author in support of the text quotes from the opinion in *Campbell* v. *Crampton,* 2 Fed. 417, 423, as follows: "Upon principle, no reason can be alleged why a contract, void for want of capacity of the party at the place where it is made, should be held good because it provides that it shall be performed elsewhere, and nothing can be found in any adjudication or text book to support such a conclusion. It is a solecism to speak of that transaction as a contract which cannot be a contract because of the inability of the persons to make it such."

Strong support for the opinion thus advanced is also found in the case of *Union National Bank* v. *Chapman,* 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614, in the Illinois case of *Burr* v. *Beckler,* 264 Ill. 230, 106 N. E. 206, L. R. A. 1916A, 1049, Ann. Cas. 1915D, 1132, and in some of the comments and citations contained in the annotation to these cases, as well as in the note to *Mayer* v. *Roche* (N. J.), 26 L. R. A. (N. S.) 763, hereinafter mentioned.

[2] In opposition to the above view is the following pronouncement by one of the most eminent of Virginia law writers, Prof. John B. Minor: "The law which is to govern in relation to the capacity of parties to enter into a contract is much disputed by the *continental* jurists of Europe. In general, however, they hold that *the law of the party's domicile* ought to govern (Stor. Confl. Laws, sec. 51 and *seq.*). But the doctrine of the common law is well established both in England and America that the capacity of parties to contract is with some few exceptions determined by the *lex loci contractus*—that is, the law of the place *with reference to which the contract is made,* which is usually the place *where it is made,* unless it is to be performed *in another place or country,* and then the law of that country." 3 Min. Inst., p. 143.

We are disposed to accept the latter as the rule applicable to the instant case, for reasons which we shall now point out.

[3] It is to be observed, in the outset, that with practical unanimity the authorities, even those relied upon by the plaintiff in error, hold that the disability of coverture arising from the law of the married woman's domicile does not follow her into other States, and that if she goes into another State than that of her domicile and makes a contract *valid by and to be performed in accordance with the* laws of such other State, she will be bound thereby, even though she would not have been competent to make the contract according to the laws of her own State. In such a case the law of the place where the contract is made will be enforced wherever the suit is brought, even in the State of her domicile, subject only to the exception that if the suit is brought in a jurisdiction whose law imposes upon married women a total incapacity to bind themselves by any contract whatever, then perhaps for reasons of public policy the contract will not be enforced. Minor's Confl.

Laws, sec. 72; *Young* v. *Hart,* 101 Va. 480, 484, 44 S. E.
703; *Armstrong* v. *Best,* 112 N. C. 59, 17 S. E. 14, 25 L.
R. A. 188, 34 Am. St. Rep. 473; *Milliken* v. *Pratt,* 125
Mass. 374, 28 Am. Rep. 241; *Bell* v. *Packard,* 69 Me. 105,
31 Am. Rep. 251; *Robinson* v. *Queen,* 87 Tenn. 445, 11 S.
W. 38, 3 L. R. A. 214, 10 Am. St. Rep. 690; 57 L. R. A.
513, note; L. R. A. 1916A, 1055, note. It follows, there-
fore, beyond question, that if Mrs. Poole had merely
stepped across the State line between Bristol, Tenn., and
Bristol, Virginia, and signed the note in the latter State,
she would be held liable thereon in a suit brought in any
State where a married woman can contract, including now
the State of Tennessee.

[4] It will be found, too, from an examination of the
authorities last above cited, to which many others of like
tenor and effect might be added, that most of them con-
cede that the actual bodily presence of the contracting
party is not necessary to make the contract valid accord-
ing to the laws of some other State than that of the domi-
cile. If, for example, in the instant case Mrs. Poole had de-
livered the note to Perkins by mailing or sending it to him
in Virginia, then by the clear weight of authority she
would have bound herself in accordance with the laws of
the State of Virginia as fully as if she had actually crossed
the State line and signed and delivered the note in that
jurisdiction. This is unmistakably implied even in the New
York case of *Union National Bank* v. *Chapman, supra,* so
strongy relied upon by the plaintiff in error.

[5] We are brought, therefore, to this question: If Mrs.
Poole had actually come into Virginia and signed the note,
or had sent it here for delivery and acceptance, would there
have been any substantial legal difference between the case
as thus supposed and the case as it actually exists? We
think not. It may be stated as settled law that when par-
ties make contracts which upon their face are to be dis-

43

·charged in a State .other than that in which ·they are executed, they are presumed, in the absence of anything to the contrary, to have intended the law of the State of performance, the *lex loci solutionis,* to control, and thus, if intention can do so, to have voluntarily constituted the law of that State the law of the contract, or, as often otherwise. expressed, the proper law or the governing law. So unanimous are the authorities on this proposition that those advocating the actual situs of the parties as the test of contractual capacity concede that if the intent in such cases is effective then they are in error and the *lex loci solutionis* must be regarded as the governing law.

The adoption of the intention of the parties to the contract as the true criterion is consistent with the reason which Prof. Minor assigns for his opinion that the proper law is the law of the place where the contract is actually signed. He says: "It may be regarded· as certain that if the party enters into a contract in the State of his domicile, though the . contract is to be performed elsewhere, the proper law governing his capacity to enter into the contract is the *lex domicilii* no matter where the suit may be brought. But if the contract is entered into in a State other than the party's domicile, he has not the same right to claim the protection of his domiciliary law. He · has voluntarily entered into another State and has there made an agreement with persons who are relying upon the law under which he is acting. To that law he has submitted himself when he makes the contract there, and a just comity will ordinarily demand that the sovereignty of that State over all acts done there should be respected'in other States." (Conflict of Laws, p. 145.) If the parties, by the mere act of signing in a State other than their domicile can give validity to a contract which would not be valid in their own State, and if the reason for this is that they are presumed to contract with reference to the law of such other

State, it would seem to follow that the actual situs of the parties is only important as a factor in determining the law with reference to which they intended to contract. In this view, all that is needed to divest a married woman of her domiciliary incapacity is an intention sufficiently evidenced or expressed to contract with reference to the laws of a State in which the contract is valid, and, as we have just seen, where the contract, like the one involved in the instant case, provides upon its face for performance in a State whose laws will uphold it, such provision is alone sufficient to evidence an intention to bring the contract within the influence of the laws of the latter State. *Building & Loan Association* v. *Ashworth,* 91 Va. 706, 712, 22 S. E. 521; *Nickels* v. *Building & Loan Association,* 93 Va. 380, 387, 25 S. E. 8; *Ware* v. *Building Association,* 95 Va. 680, 684, 29 S. E. 744, 64 Am. St. Rep. 826. These cases did not involve the question of contractual capacity, but granting that the intention of the parties determines the proper law, the decisions here cited are conclusive of the proposition that the note in litigation, by providing for payment in Virginia, sufficiently expressed such intention. Citations to the same effect might be multiplied indefinitely.

In the elaborate note cited, *supra,* L. R. A. 1916A, 1055, the learned author shows that if the true criterion as to the proper or governing law is to be found in the intention of the parties, then the law of the place of performance controls, and accordingly determines the question of the capacity to make a contract. The case to which that note is appended, *Burr* v. *Beckler, supra,* and some decisions cited therein and in the note, as well as the discussion by the author, vigorously challenge the correctness of this test. In our opinion, however, it furnishes the most satisfactory and consistent solution of the question. It affords a simple and uniform rule, fair to both parties and applicable alike to all contracts regardless of whether the par-

ties reside in the same or different States; and it gives due recognition to the sovereignty of the State whose laws are thus invoked. As to precedent and authority for the adoption of this test, it would require some boldness in the face of the multitude of apparently conflicting decisions and text book discussions bearing more or less directly on the question, to undertake to affirm that the decided weight of authority is either for or against it. We content ourselves with the statement that it appears to us as being supported by the better reason and by entirely sufficient authority.

In 3 Min. Inst. 145, cited *supra*, Prof. John B. Minor employs the phrase *lex loci contractus* to indicate the law of the place with reference to which the contract is made, and says that such place is usually the *place where it is made, unless* it is to be *performed in another place or country.* In other words, according to his view the *place of the contract*, in legal contemplation, depends upon the presumed intention of the parties. This definition or understanding of the *lex loci contractus,* or law of the place of the contract, is not by any means universally approved, but it has been very extensively employed by high authority. The fact that it is not universally approved, of course, accounts for the conflict of authority upon the question at issue in this case. The authorities which are at variance with the conclusion we have reached are so because of the intrinsic effect accorded by them to the local situs of the contracting parties in determining what is legally the place of the contract. The following authorities, in addition to those already cited, support Prof. Minor's view:

"It will be presumed that the contract is to be performed at the place where it is made and is to be governed by its laws, if there is nothing in the terms of the contract or in the explanatory circumstances of its execution inconsistent with that intention. But if by the

terms of the contract it is to be performed in a place other than the place of execution, the place of performance will ordinarily be deemed the place of contract, at least unless the parties otherwise intended." 22 Am. & Eng. Ency. L. (2d ed.) 1325.

In *Robinson* v. *Queen*, 87 Tenn. 445, 446, 11 S. W. 38, 3 L. R. A. 214, 215, 10 Am. St. Rep. 690, 691, the Supreme Court of Tennessee said: "Though some authorities may be found to the contrary, it may now be said to be well settled law that the validity of a contract, the obligation thereof, and capacity of the parties thereto, is to be determined by the *lex loci contractus* (in the sense of the place of performance), unless there be something in the contract which is deemed hurtful to the good morals or injurious to the rights of its own citizens by the laws of the State or country whose courts are called upon to enforce the contract made in a foreign State or country."

In that case the court was dealing with a contract made in Kentucky to be performed in Kentucky by a married woman domiciled in Kentucky, but the language quoted shows that the Tennessee court intended the phrase *lex loci contractus*, in the sense of the place of performance, to refer to legal seat or place of the contract.

Mr. Freeman in a note to *McGarry* v. *Nicklin*, 55 Am. St. Rep. 48, says: "Where the parties to the contract reside in different States or countries, unless they take the trouble to both go to the same place, one of them must manifest his assent in one State or country and the other in another. We think it absurd for the purpose of determining the place of the contract and by what laws it shall be construed and its validity adjudged to inquire which of the parties happened to manifest his assent last, or what was the mode or place of delivery. From the contract. or from it and other convenient evidence, the place where it was intended to be executed or enforced

can be made evident. The performance of the contract is the essential thing and in our judgment should control; and, the place where that performance is to take place should be deemed for all substantial purposes the place of contract."

In Story on Conflict of Laws, sec. 301 A, it is said: "But several, and indeed most of them (judicial decisions under discussion by the author), do expressly and directly recognize the rule that where the contract is made in one place and is to be performed in another, not only may the law of the latter be properly called the *locus contractus*, but that it ought in all respects, except as to the formalities and solemnities and modes of execution, to be deemed the rule to govern such cases."

See also, *Pritchard* v. *Norton*, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104, 108; Min. Confl. Laws, pp. 362, 363, and numerous cases cited in note 3 thereto; Freeman's note, 55 Am. St. Rep. 778.

The definition of the *lex loci contractus*, as above expressed or implied, has been the subject of criticism from eminently respectable writers, but it must be conceded that, however plausible the objection to this use of the phrase may be, the authorities thus using it are themselves of very high rank and are more numerous than thouse holding the opposite view.

It may be remarked, in passing, that no question arises in this case as to the formalities attending the execution of the note sued on.

We will conclude this discussion by a reference to a few cases dealing concretely with the question at issue, and in which the law of the place of performance, instead of the place of execution and delivery, has been held to be the proper law in determining the capacity of married women to make a contract.

The case of *Baum* v. *Birchall,* 150 Pa. 164, 24 Atl. 620, 30 Am. St. Rep. 797, involved the validity of a bond and mortgage executed by a married woman in Pennsylvania in consummation of a purchase by her of real estate in Delaware.    According to the laws of Pennsylvania, a married woman could not bind herself personally by such a bond, but she could do so by the laws of Delaware.    The question was whether her rights and obligations under the bond were to be determined by the laws of Delaware or by those of Pennsylvania.    The suit was brought in Pennsylvania, and she was held liable on the ground that the contract was a Delaware contract, and, therefore, controlled as to its validity by the laws of that State.    It is true that the court found that in the contract, though actually signed in Pennsylvania, was delivered and became binding in Delaware, and seems to have finally rested the decision on that ground, but the case nevertheless distinctly holds that the capacity of a married woman to contract is an element to be determined by the place of performance.    The opinion says: "If it be conceded that the bond and mortgage were executed in this State (Pa.), yet it appears upon their face that they were to be performed in the State of Delaware, and the general rule is that in such cases the instrument is to be governed as to its validity, nature, obligation and interpretation by the laws of the place where it is to be performed."    Citing Story on Conflict of Laws, sec. 280; 2 Kent's Com. 449.

*Mayer* v. *Roche,* 77 N. J. L. 681, 75 Atl. 235, 26 L. R. A. (N. S.) 763, is a strong case and is much in point. The action there was on a promissory note, in which a married woman appeared as a joint maker.    It appeared that the note was signed by Mrs. Roche in New Jersey, where she resided, but was dated and payable in New York.    By the New Jersey law it was void, but by the New York law it was valid.    The court in New Jersey,

in *Thompson* v. *Taylor*, 66 N. J. L. 253, 49 Atl. 544, 54 L. R. A. 585, 88 Am. St. Rep. 485, had previously held that the law of the place of contract was decisive on the question of the competency of a married woman to make a contract. The question in the Roche case, therefore, was, as stated in the opinion, whether "the place of contract was New York or New Jersey." The court, adopting the intention of the parties as the true criterion, said: "What then must be presumed to have been the intention of the parties to the note in suit, as to the law by which their contract was to be governed? We think the fact that it was dated in New York indicates that the parties meant to be bound by New York law. It has been so held in our Supreme Court in *Hoppins* v. *Miller*, 17 N. J. L. 185. In addition, the fact that the note was payable in New York is sufficient of itself to justify the conclusion that New York law was the law contemplated. It has been so held in this State in cases involving the question of usury. *Ball* v. *Consolidated Franklinite Co.*, 32 N. J. L. 102; *Freese* v. *Brownell*, 35 N. J. L. 285, 10 Am. Rep. 239. Authority in other jurisdictions is ample. *Andrews* v. *Pond*, 13 Pet. 65 10 L. Ed. 61; *Pritchard* v. *Norton*; 106 U. S. 124 [1 Sup. Ct. 102, 27 L. Ed. 104]; *London Assur. Co.* v. *Companhia de Moagens*, 167 U. S. 149 [17 Sup. Ct. 785, 42 L. Ed. 113]; *Shoe & Leather Nat. Bank* v. *Wood*, 142 Mass. 563, 8 N. E. 753. This view of the presumed intention of the parties is based upon the well-settled rules as to the effect of the place where the contract is made and the place where it is to be performed is in accord, also, with the general principle which would lead us to hold that the parties meant to make a binding contract, and that neither meant to mislead the other."

See also *Basilea* v. *Spagnuolo*, 80 N. J. L. 88, 77 Atl. 531; *Fiske Rubber Co.* v. *Muller*, 42 App. D. C. 49; *Hammerstein* v. *Sylvia*, 66 Misc. Rep. 550, 124 N. Y. Supp. 535.

[6]   We conclude, therefore, that the note sued on in this case must be construed as having been executed with reference to the laws of the State of Virginia; that it became to all legal intents and purposes, so far as its validity is concerned, as truly a Virginia note as if it had been signed and delivered here; that by the laws of this State, Mrs. Poole could have legally executed the same; and that, therefore, the lower court was right in holding her liable.

The judgment is accordingly affirmed.

*Affirmed.*