■ AFIA, Respondent, v CONTINENTAL INSURANCE COMPANY, Appellant.

This action arose out of a policy of insurance issued by the defendant, Continental Insurance Company, to the plaintiff, AFIA, a company which conducts insurance business outside the continental United States.

In connection with a certain lawsuit, the plaintiff was served with a counterclaim alleging that its effort to terminate a certain underwriting relationship constituted malicious and willful conspiracy, fraud, tortious interference with a contract, and in which $10 million was sought in compensatory damages, $10 million in punitive damages, and $5 million for alleged breach of contract. A copy of the answer with the counterclaims was transmitted to Continental, which, acting through its agent, agreed to assume the plaintiff's defense of the action without reservation, except for denying coverage for the punitive damages. In addition, the defendant accepted the plaintiff's choice of a law firm to represent plaintiff in the action, and agreed to pay reasonable attorney's fees relating to the defense.

The complaint alleges that on July 28, 1981, the plaintiff wrote to Continental's agent requesting settlement authority up to the $1 million policy limit for plaintiff to settle the action for less than $2 million. No response was received to this request, nor was any response received to several follow-up requests. The complaint further alleges that plaintiff was unable to settle the action prior to October 1981 because the defendant failed to respond to its request for settlement authorization, and thereby lost the opportunity to settle the action for less than $2 million. Thereafter, Continental's agent

wrote to plaintiff declining the coverage previously extended, setting forth varied grounds for so doing, each of which the complaint asserts to have been unfounded. It is further alleged that the plaintiff spent over $500,000 in defending the action, and ultimately settled the action in May 1982 for $3 million.

In the original complaint setting forth two causes of action, plaintiff sought to recover $500,000 in costs incurred in defending the action, and $1 million (the policy limit) of the money paid to settle the action. The first cause of action sought these sums under the terms of the policy; the second sought them on the basis of estoppel. Giving rise to the issue on this appeal, plaintiff then moved to amend the complaint to set forth a third cause of action alleging that the defendant, in failing to respond to its requests for settlement, had violated its obligation to act in good faith. The third cause of action sought "amounts in excess of $1 million plus interest in compensatory damages, and $2 million plus interest in exemplary damages."

Concluding that plaintiff's proposed third cause of action set forth a legally sufficient claim for punitive damages, the IAS court granted the motion for leave to amend the complaint to include that cause of action. We disagree in part, and accordingly modify the order appealed from to delete that part of the proposed amended complaint which seeks punitive damages.

As we interpret the proposed third cause of action, it seeks two separate forms of relief. First, plaintiff seeks compensatory damages, not confined to the policy limit, reflecting damages sustained because defendant's alleged bad-faith refusal to authorize settlement resulted in an ultimate settlement substantially in excess of that for which the claims against it could have been settled. Second, plaintiff additionally seeks punitive damages.

The two branches of the prayer for relief present quite different issues of law. The law is well established that compensatory damages in excess of the policy limits may be recovered where an insurer, in violation of its implied obligation to act in good faith, has failed to make a reasonable settlement of a claim within policy limits. (See, *Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427; *State of New York v Merchants Ins. Co.*, 109 AD2d 935; *Young v American Cas. Co.*, 416 F2d 906.) However, there is no authority in this State for the thesis that an allegation of bad faith by an insurer in

failing to settle, without more, gives rise to a claim for punitive damages, a claim which is irreconcilable with well-known and firmly established principles regulating the circumstances under which punitive damages may be recovered. *(Walker v Sheldon,* 10 NY2d 401; *Halpin v Prudential Ins. Co.,* 48 NY2d 906; *Royal Globe Ins. Co. v Chock Full O'Nuts Corp.,* 86 AD2d 315, *lv dismissed* 58 NY2d 800.) To the extent to which a passing comment in *Oppel v Empire Mut. Ins. Co.* (517 F Supp 1305) may reasonably be read as recognizing a right to punitive damages under such circumstances, the comment appears to represent a misunderstanding of that which was said in *Gordon v Nationwide Mut. Ins. Co. (supra).*

In *Gordon (supra,* at 436-437), which remains the leading authority on the issue, the court set forth the applicable rule in the following words: "For a breach of contract based only on a failure to make reasonable settlement of a claim within the policy limits, damages are measured by the policy limits. For a breach of implied conditions of the contract to act in its performance in good faith in refusing to settle within the policy limits, the damages may exceed the policy limits." It is true that in *Gordon* the majority opinion referred to the punitive aspects of damages awarded in excess of the policy limit in support of its conclusion that the evidence had not sufficiently established the bad-faith conduct of the insurer. But there is an obvious distinction between the comment that the rule of compensatory damages for bad faith in refusing to settle has a punitive aspect, and the conclusion that a claim of bad faith, without more, provides a legally sufficient basis for seeking punitive damages. The nature of the distinction is clearly underlined by the circumstance that in *Gordon* the jury had returned a verdict for punitive damages which had been set aside by the trial court, whose action in setting aside that part of the verdict had been affirmed in the Appellate Division and appears not even to have been an issue raised in the Court of Appeals. Concur—Murphy, P. J., Sandler, Asch, Milonas and Smith, JJ.