William ROBERTS, et al., Plaintiffs,

v.

AETNA CASUALTY & SURETY COMPANY, et al., Defendants.

Civ. A. No. 87–0115–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

May 12, 1988.

James Michael Shull, Gate City, Va., for plaintiffs.

William W. Eskridge, Abingdon, Va., for Aetna.

Charles E. Schelin, Lebanon, Va., for Salyers.

Ford C. Quillen, Gate City, Va., for State Farm.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This suit involves the validity of an insurance policy provision which excludes from

coverage injuries to employees of the insured. The court upholds the validity of the provision under Tennessee law as it does not violate any strong Virginia public policy.

## FINDINGS OF FACT

William Roberts (Roberts), a Tennessee resident, owns and operates a farm in Scott County, Virginia on which he raises tobacco. He employed Helen Salyers (Salyers), a Virginia resident, to grade tobacco in December of 1985. Salyers and her husband had previously been sharecroppers for Roberts.[1] She was to begin working when the tobacco was in case[2] and ready for grading.

In the late afternoon on the fifth of December, Salyers went to Roberts' son's farm which was on a tract adjoining Roberts' farm to inquire of Roberts whether the tobacco was in case. Roberts was not certain of the tobacco's condition and suggested they proceed to his tobacco barn to examine the tobacco. Roberts, Salyers and two members of her family rode over to the barn where he inspected the tobacco and concluded it was ready for grading. While Salyers remained in the cab, the others loaded the tobacco on the truck to take it to the grading shed. After the tobacco was loaded, Roberts, with Salyers by his side, drove the truck to the shed, which is located near the crest of a hill close to what Salyers termed a "cliff." All the witnesses agree Roberts was driving very slowly, no faster than a walking pace. While turning the truck in order to back it into the shed to facilitate unloading, Roberts crossed the face of the hill (traversed the fall line). The earth was muddy due to a drizzle and earlier snow and the truck began to slide sideways down the hill. In spite of the presence of all weather tires on the vehicle, the fact that the truck was in all-wheel drive mode, and Roberts' efforts to arrest the slide by alternating efforts of accelerating to straighten out and braking to stop, the truck continued sliding down the hill for approximately two hundred feet before tumbling into a creek. Salyers sustained injuries to her face, neck and appendages.

Roberts, a retired truck driver with several decades of driving experience, had insured the truck with Aetna Casualty & Surety Company through Price & Ramey, an insurance agent in Kingsport, Tennessee. Roberts called on Aetna to defend the negligence action brought by Salyers in Scott County Circuit Court.[3] Aetna denied coverage because of an exclusion in the insurance contract for persons sustaining bodily injury during the course of employment.[4] Roberts in turn filed this suit in Scott County Circuit Court against Aetna, Salyers, and State Farm Mutual Automobile Insurance Company (State Farm), the uninsured motorist carrier for plaintiff, seeking a declaratory judgment of Aetna's obligations to Roberts relative to Salyers' negligence claim. Aetna removed the suit to this court under diversity jurisdiction pursuant to 28 U.S.C. § 1441 (1982).

The case has been submitted to the court for decision on the summary judgment motions of the parties based on the stipulations, depositions and memoranda. As there are no affidavits setting forth specific facts showing that there is a genuine issue for trial, *see* Fed.R.Civ.P. 56(e), the court sets forth its opinion on the merits of the motions.

## CONCLUSIONS OF LAW

■ Initially, the court must determine what law governs the dispute. A federal

---

1. The sharecropping arrangement was that Roberts would provide all materials and Salyers and her husband were entitled to half of the proceeds from the sale of the tobacco crop.

2. "In case" is an expression employed in tobacco farming which refers to the condition tobacco leaves must be in before they are ready for grading.

3. The suit was originally filed in Russell County, Virginia Circuit Court but transferred to Scott County because it was the situs of the accident.

4. The provision is as follows:
   **EXCLUSIONS** We do not provide liability coverage:
   \* \* \* \* \* \*
   4. For any person for bodily injury to an employee of that person during the course of employment.

court sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits. *See Goad v. Celotex Corp.,* 831 F.2d 508, 510 (4th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2871, 100 L.Ed.2d —— (1988). This case is about an exclusion clause within an insurance contract, an issue which goes to the validity and interpretation of the contract. In Virginia, the law of the place of contracting controls the "nature, validity and interpretation" of the contract. *Woodson v. Celina Mutual Ins. Co.,* 211 Va. 423, 426–27, 177 S.E.2d 610, 613 (1970); *Occidental Fire & Cas. Co. v. Bankers & Shippers Ins. Co.,* 564 F.Supp. 1501, 1503 (W.D.Va. 1983); *Crosson v. Conlee,* 745 F.2d 896, 902 (4th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). Although Roberts states simply "Virginia substantive law applies" without analysis, the other parties do not dispute that Tennessee was the place of formation as Roberts, a Tennessee resident, procured the policy through Price & Ramey, a Tennessee insurance broker. However, State Farm points to the exception to the *lex contractus* rule which is that the law of the place of performance shall govern the contract if it is different from the place of contracting. *Poole v. Perkins,* 126 Va. 331, 334, 101 S.E. 240, 240–43 (1919); *accord Heavner v. State Auto. Mut. Ins. Co. of Columbus, Ohio,* 350 F.Supp. 859, 862 (W.D.Va.1972).

The facts do not indicate in which state the parties intended the contract to be performed. Although Roberts is a Tennessee resident, his farm is located in Nickelsville in Scott County, Virginia. His son's farm adjoins his farm and, in fact, he was at his son's the day Salyers came to inquire about the tobacco. The farm had an old dwelling house which Roberts renovated and used on weekends or when "we'd go up there and spend time." Deposition at 126. However, vandals later rendered the house unfit for dwelling, so Roberts converted it to a grading shed. He stated that he spent most of his time in Tennessee. However, he specifically told the insurance brokers the truck was for "farm use," which they presumably considered in calculating premium cost from risk of liability.

■ The court concludes from these facts that the parties intended the contract to be performed in both Virginia and Tennessee since this is a border area. *See* Restatement (Second) of *Conflict of Laws* § 188 comment e. at 580 (1971) ("[t]he place of performance can bear little weight in the choice of the applicable law when ... (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue.") The court will apply the general rule and not its exception. Therefore, the law of Tennessee shall govern the validity of the employees-of-the-insured clause.[5]

## WHETHER SALYERS WAS ROBERTS' EMPLOYEE UNDER TENNESSEE LAW

■ The insurance policy excludes Roberts from coverage for injury to any person he has employed during that person's course of employment.[6] Tennessee courts refer to workers' compensation concepts to determine whether one is an employee under an insurance contract. *See Vaughn v. Standard Surety & Casualty Co.,* 27 Tenn.App. 672, 676, 184 S.W.2d 556, 558 (1944). The general rule is that an employee commuting to work is not in the course of employment. *Woods v. Warren,* 548 S.W.2d 651, 652 (Tenn.1977). However, an employee is considered to be in the course of employment if the employer furnishes the transportation, *Vaughn,* 27 Tenn.App. 676, 184 S.W. at 558, the employee must travel a required route with special hazards, *Frazier v. Normak Intern.,* 572 S.W. 2d 650 (Tenn.1978) or where the employee is on the employer's property as an incident

---

**5.** This result accords with the other cases which hold that the law of the place where the policy was delivered controls. *E.g., Hardware Mut. Casualty Co. v. Wendlinger,* 146 F.2d 984, 989 (4th Cir.1944) and cases cited therein. There is no need to address this apparent conflict since it is safe to infer the policy in issue was delivered in Tennessee since Roberts and Price & Ramey reside there.

**6.** *See supra* note 4.

of the employment. *See Kaylor v. Magill,* 181 F.2d 179, 181 (6th Cir.1950). Aetna argues that Salyers falls within each of the three exceptions.

The facts reveal that Roberts suggested he and Salyers proceed to his barn to inspect the tobacco and determine whether it was in case. The parties rode in Roberts' truck. Salyers stated that the private road off the highway to the farm was too rough for her to drive by means of her husband's 1971 Plymouth sedan. Roberts was to pay Salyers an hourly wage for her grading services. She was not being compensated for the time consumed with Roberts' inspection of the tobacco. Roberts stated it was not certain whether Salyers would begin grading that night. However, Salyers stated she had previously graded tobacco "at night."

The court believes those facts fall within the purview of the employer-provided transportation exception enunciated in *Vaughn.* In that case a minor was injured while riding in employer-provided transportation. 27 Tenn.App. 671, 874 S.W.2d 556. All laborers, including Vaughn, were to report to work no later than seven o'clock in the morning when their employer would send them to various parts of Warren County to construct power lines. *Id.* at 676, 184 S.W.2d at 559. The laborers were not compensated for the time spent commuting to their assigned site. Vaughn was injured on the return commute at the end of the day. He was not required to return to the morning site but could have availed himself of other transportation home. Salyers was in a similar situation. Due to the rough terrain on the private road to Roberts' farm, she could not transport herself; she was dependent on Roberts for a ride in a truck or all-terrain vehicle. The road condition was exacerbated due to the weather. A necessary incident of her employment was performing her services in the grading shed on Roberts' farm. He was obliged to transport her to the grading shed. The time spent during the ride was within the course of her employment. Therefore, Aetna is not bound to defend or indemnify Roberts against Salyers' negligence suit.

## WHETHER VIRGINIA HAS A STRONG PUBLIC POLICY AGAINST VIOLATION OF THE OMNIBUS PROVISIONS

Although the court concluded that under Tennessee law the policy's exclusion for injury to employees of the insured allows Aetna to legally deny Roberts coverage, the analysis continues. Under its diversity jurisdiction this court sits as a Virginia state court. *See Goad,* 831 F.2d at 510. Generally, the forum court will not permit the enforcement of a contract regardless of its validity where made when the contract violates the public policy of the forum state. 16 Am.Jur.2d, *Conflict of Laws* § 19 (1979). This is the rule in Virginia. *Willard v. Aetna,* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); *State of Maryland v. Coard,* 175 Va. 571, 578, 9 S.E.2d 454, 457 (1940); *Nelson v. Chesapeake & Ohio R.R. Co.,* 88 Va. 971, 975, 14 S.E. 838, 839 (1852); *Lewis v. Glenn,* 84 Va. 947, 961, 6 S.E. 866, 874 (1888). The court must therefore decide whether Virginia has a settled public policy against insurance contract provisions which deny coverage for employees of the insured.

Va.Code § 38.2–2204 A [7] (1986) requires insurers to include an "omnibus clause"

---

**7. Liability insurance on motor vehicles, aircraft and watercraft; standard provisions; "omnibus clause".**—A. No policy or contract of bodily injury or property damage liability insurance, covering liability arising from the ownership, maintenance, or use of any motor vehicle, aircraft, or private pleasure watercraft, shall be issued or delivered in this Commonwealth to the owner of such vehicle, aircraft or watercraft, or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle, aircraft, or private pleasure watercraft that is principally garaged, docked, or used in this Commonwealth, unless the policy contains a provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle, aircraft, or private pleasure watercraft with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle, aircraft, or watercraft by the named insured or by any such person. Each such policy

extending the same coverage as that given the name insured to one legally operating the motor vehicle with either the express or implied consent of the insured. *Aetna v. Czoka*, 200 Va. 385, 390, 105 S.E.2d 869, 873 (1958) (construing former § 38–328). The purpose of the provision is to protect those injured by the negligent operation of an automobile in this Commonwealth. *Id.* Courts have interpreted subsection 2204 D [8] to prohibit any exclusions from policy coverage except those expressly provided for by statute. *Southside Distributing Co. v. Travelers Indemnity Co.*, 213 Va. 38, 41, 189 S.E.2d 681, 683 (1972). This latter case is particularly significant because it held void an exclusion similar to the policy in this case. *Id.* at 40, 189 S.E.2d at 682.

There is no doubt that the provision in question would be void had the contract been formed in Virginia. *Southside*, 213 Va. at 41, 189 S.E.2d at 683. *Southside* recognizes, however, that the decision to void the provision was not merely another mundane legal decision; the Virginia Legislature enacted the predecessor to § 38.2–2204 D immediately after the Virginia Supreme Court had upheld an employee-of-the-insured exclusion in *Stillwell v. Iowa Mutual*, 205 Va. 588, 139 S.E.2d 72 (1964). Indeed, the *Southside* court recognized that the omnibus provision was amended to "prohibit the issuance of policies containing exclusions permitted under our previous interpretation of the omnibus clause." 213 Va. at 41, 189 S.E.2d at 683. The Virginia General Assembly's reaction to the *Stillwell* decision seems to emphasize the law. Aetna argues that *Southside*

was overruled by *Transit Casualty Co. v. Hartman*, 218 Va. 703, 239 S.E.2d 894 (1978) as the Fourth Circuit recognized in *Safeco Insurance v. Merrimack Insurance*, 785 F.2d 480 (4th Cir.1986). This is incorrect. The arguments in *Transit* and *Safeco* had the effect of converting "a liability policy into a policy covering first party loss." *Safeco*, 785 F.2d at 482; *Transit*, 218 Va. at 708, 239 S.E.2d at 897. No such effect occurs here. The exclusion for negligence of an employee is the type of non-statutory exclusion the Virginia Legislature sought to prevent by enacting § 38.2–2204 D as the Virginia Supreme Court recognized in *Southside*.

Looking to § 38.2–2204 D and the *Southside* decision, State Farm argues that Virginia has a clear public policy against employee-of-the-insured exclusion. It further argues that Va.Code § 46.1–508 [9] does not require automobile policies to insure against employee claims which are not covered by workmen's compensation benefits, demonstrating a clear and comprehensive scheme setting out the public policy.

■ Whether another forum's law is against the public policy of Virginia is not easy for a court to discern. "No fixed rule can be given to determine what is public policy." *Higgins v. McFarland*, 196 Va. 889, 894, 86 S.E.2d 168, 172 (1955). A mere difference in the law of the forum state and that of the contracting state is insufficient for comity to deny recognition. *Tate v. Hain*, 181 Va. 402, 413, 25 S.E.2d 321, 326 (1943). "There must be something immoral, shocking to one's sense of right, in

---

**8.** D. Any endorsement, provision or rider attached to or included in any such policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section shall be void.

or contract of liability insurance, or endorsement to the policy or contract, insuring private passenger automobiles, aircraft, or private pleasure watercraft principally garaged, docked, or used in this Commonwealth, that has as the named insured an individual or husband and wife an that includes, with respect to any liability insurance provided by the policy, contract or endorsement for use of a nonowned automobile, aircraft or private pleasure watercraft, any provision requiring permission or consent of the owner of such automobile, aircraft, or private pleasure watercraft for the insurance to apply, shall be construed to include permission or consent of the custodian in the provision requiring permission or consent of the owner.

**9.** **Liability covered by workers' compensation law.**—Policies issued under the provisions of this chapter shall not insure any liability of the employer on account of bodily injury to, or death of, an employee of the insured for which benefits are payable under any workers' compensation law.

order that comity be denied." *Id.* at 413, 25 S.E.2d at 325. Applying these rules, the Virginia Supreme Court refused to recognize a Greek adoption where the primary consideration was the best interests of the adoptive father, and not that of the child, as required in Virginia adoption proceedings. *Doulgeris v. Bambacus,* 203 Va. 670, 675, 127 S.E.2d 145, 147 (1962). The adoption occurred because the eighty-six year old adoptive father and sixty-eight year old bedridden paralytic mother needed "a child for our attendance, consolation and support," both of them dying a year later. *Id.* A polygamous or incestuous marriage would likewise not be upheld through comity. *Toler v. Oakwood Smokeless Coal Corp.,* 173 Va. 425, 4 S.E.2d 364 (1939). On the other hand, Virginia would recognize a direct suit against an insurer under North Carolina law although not allowed under Virginia law. *Willard v. Aetna,* 213 Va. 481, 193 S.E.2d 776 (1973). The Virginia public policy of prohibiting the mention of insurance coverage in liability suits to avoid prejudice was not a hard and fast rule and could be waived at the insurer's option. *Id.* at 483, 193 S.E.2d 778.

■ The court believes it must recognize the validity of the employee-of-the-insured exclusion under Tennessee law. This suit does not involve "something immoral, shocking to one's sense of right," *Tate,* 181 Va. at 413, 25 S.E.2d at 326, as the Greek adoption in *Doulgeris* or the bigamous marriage in *Toler.* At issue is a mere difference in the law of two different states, which is insufficient to warrant application of the public policy exception. Speaking more than seventy years ago, Judge Cardozo counseled against a parochial use of the public policy exception unless recognizing the foreign law "would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 111, 120 N.E. 198, 202 (1918). Upholding a contract of insurance as the parties bargained for does not rise to this level even considering the speed of the Virginia legislature's reaction to the *Stillwell* decision and the comprehensive insur-

ance regulatory scheme in the Virginia Code. This decision merely recognizes a contract validly entered into in another state. Although the result is that Roberts must defend himself from suit and Salyers can look only to Roberts to satisfy her claim, this potentially harsh result does not justify non-recognition of a sister state's law.

## CONCLUSION

The court grants Aetna's motion for summary judgment. All other motions are denied.