**RYDER TRUCK RENTAL, INC., Plaintiff,**

v.

**UTF CARRIERS, INC., et al., Defendant.**

**Civ. A. No. 89–0038–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 19, 1992.

Nathan H. Smith, Eric S. Jensen, Smith & Jensen, Richmond, Va., for Ryder Truck Rental, Inc.

Elizabeth P. Coughter, Bruce D. Rasmussen, Kevin W. Ryan, Michie, Hamlett, Lowry, Rasmussen & Tweel, Charlottesville, Va., for UTF Carriers, Inc.

Colin J.S. Thomas, Jr., Timberlake, Smith, Thomas & Moses, Staunton, Va., for Nat. Union Fire Ins. Co.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the Court on cross motions for summary judgment in a breach of contract action brought by Ryder Truck Rental, Inc. (Ryder) against defendants, UTF Carriers, Inc. (UTF) and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) for their breaches of separate contracts. Also before the Court is a motion to amend the complaint by adding a tort claim against National Union for bad faith refusal to insure, seeking both compensatory and punitive damages. This Court has jurisdiction based upon diversity of citizenship.

### I. Background

The contract claims are an outgrowth of a personal injury action that arose from an accident on November 11, 1986, near Scottsville, Virginia, involving a driver furnished to UTF in connection with UTF's lease of a tractor from Ryder under a contractor operating agreement. In the personal injury action brought by an injured motorist, the driver of the tractor trailer, Norwin Darthard (Darthard), and UTF were the original defendants. Subsequently the corporate predecessor to Ryder [1] was added as a defendant. The personal injury case was settled in 1989, with Ryder and UTF each paying $265,000 to the plaintiff.

In October, 1989, Ryder filed this action against UTF alleging that UTF had breached the contractor operating agreement by failing to insure Ryder, and against National Union alleging that it had breached its insurance contract by failing to indemnify or defend Ryder. Ryder filed motions for summary judgment against both defen-

---

1. Ryder Truck Rental Inc. was the corporate successor to Saunders Leasing System, Inc. (Saunders). Although the parties in their pleadings correctly distinguish between these two entities, for purposes of clarity, this Opinion will refer to both Saunders and Ryder as simply "Ryder".

dants, and subsequently also filed an Amended Complaint stating that it had determined through discovery of an insurance broker that it was in fact covered under two National Union insurance policies dated December 8, 1986, and a binder effective from April 30, 1986.[2] This revelation supported Count II of the Amended Complaint which alleged that National Union tortiously breached the insurance contracts by its bad faith refusal to defend Ryder and Darthard. In response, National Union filed an Amended Answer admitting liability for the breach of contract, and raising as a defense the fact that it had already reimbursed Ryder for the $265,000 Ryder contributed to the settlement of the underlying personal injury action. In addition, UTF moved for summary judgment against Ryder, arguing that because Ryder was in fact covered, UTF did not breach its contract to obtain insurance for Ryder.

## II. The Motions for Summary Judgment

The Court finds that in light of Ryder's admission in its pleadings that it was covered in accordance with the contractor operating agreement, and National Union's admission that it breached its insurance contract, no genuine dispute as to any material fact remains with respect to Ryder's claims against UTF or National Union for breach of contract. Accordingly UTF is entitled to judgment against Ryder as a matter of law, and its motion for summary judgment against Ryder shall be granted, and Ryder's motion for summary judgment against UTF shall be denied. Also, as a matter of law Ryder is entitled to judgment against National Union for breach of contract and therefore its motion for summary judgment against National Union shall be granted.

## III. The Motion to Amend Complaint

Unfortunately, those decisions do not dispose of this matter. This Court must now consider the propriety of granting Ryder's motion to amend its complaint by adding a count for tortious breach of contract including claims for $33 million in compensatory damages and $30 million in punitive damages. In spite of the size of the judgment plaintiff seeks, the Court is predisposed to follow Rule 15's admonition to grant freely leave to amend where justice so requires. However, because defendant has argued that such an amendment is futile in that it does not state a cognizable claim, the Court is compelled by concerns for efficiency to consider the legal merits of the proposed amendment.

### A. The Proposed Amendment May Not Be Futile.

The crux of the issue is whether the laws of either Virginia, where the tortious injury allegedly took place, or of Connecticut or New York (one of which states' law allegedly governs the underlying contract), recognize a tort of bad faith breach of contract by an insurer that would support the claimed compensatory or punitive damages. If none if the three states' laws recognizes such a claim, then as noted by counsel for National Union in oral argument, the motion to amend should be denied as futile. If any of these jurisdictions recognizes such a claim, the Court must then proceed to determine which state's body of law governs this matter.

 Comparing the laws of Virginia, Connecticut, and New York as to the availability of compensatory and punitive damages against an insurer who tortiously and in bad faith fails to defend or satisfy a claim against its insured, this Court has determined first that Virginia law does not recognize such a claim as capable of supporting punitive damages. In the leading case of *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983), the Supreme Court of Virginia explained that in an exceptional case, an evidentiary showing and a separate count in the complaint alleging "an independent, wilful tort, beyond the mere breach of a duty imposed by a contract," might support an award of punitive

**2.** The parties experienced considerable difficulty locating the insurance contracts at issue in this case.

damages in an action for breach of contract. *Id.* at 518. However, the Fourth Circuit in *Bettius & Sanderson, P.C. v. National Union Fire Insurance Co.*, 839 F.2d 1009, 1016 (4th Cir.1988) (involving a third party insurance controversy) and *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 798 F.2d 669, 676 (4th Cir. 1986) (involving a first party insurance controversy), interpreted Virginia decisions to hold that in a Virginia insurance relationship, liability for bad faith conduct is a matter of statutory law and the common law of contracts rather than of tort law. Considering these binding decisions, it is clear that the alleged bad faith of the National Union at most breaches a contractual duty, and does not constitute an independent tort under Virginia common law capable of supporting a claim for punitive damages.[3]

■ By contrast, Connecticut appears to recognize a tort remedy for an insurer's bad faith breach of its duties under its insurance contracts. *See Grand Sheet Metal Products Co. v. Protection Mutual Insurance Co.*, 34 Conn.Supp. 46, 375 A.2d 428 (1977). In *Grand Sheet Metal*, the court followed the California Supreme Court's landmark decision in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1972), which held that "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Id.* 108 Cal.Rptr. at 486, 510 P.2d at 1038. The court in *Grand Sheet Metal* incorporated in its ruling an additional requirement that the claim be expressed in a separate tort count from the claim for breach of contract. *See* 375 A.2d at 430. Ryder, in this case, attempts to assert just such a claim, and therefore this Court believes the claim would be recognized by the courts of Connecticut.

■ The law of New York also appears to go farther than Virginia does by provid-

ing for the collection of compensatory damages above policy limits in cases involving bad faith conduct by insurers. *See Gordon v. Nationwide Mutual Insurance Co.*, 30 N.Y.2d 427, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849, 854 (1972). However, bad faith claims against insurers are treated as contract claims instead of tort claims. *See e.g. Oppel v. Empire Mutual Insurance Co.*, 517 F.Supp. 1305, 1307 (S.D.N.Y.1981); *Royal Globe Insurance Co. v. Chock Full O'Nuts Corp.*, 86 A.D.2d 315, 449 N.Y.S.2d 740, 743 (1982). It also seems that although some New York courts are unwilling to call these damages "punitive," *see e.g. AFIA v. Continental Insurance Co.*, 140 A.D.2d 167, 527 N.Y.S.2d 420, 421–22 (1988), there is a punitive intent behind assessing damages in excess of policy limits in egregious contract cases. *See Gordon*, 334 N.Y.S.2d at 608, 285 N.E.2d at 854 (noting the "punitive nature" and "punitive measure" of damages in excess of policy limits). Finally, the New York cases this Court has reviewed appear to agree that these extra-contractual damages may be assessed only in extraordinary cases, especially those involving injuries to public rights or welfare as opposed to private wrongs. In spite of the fact no injury to a public right has been alleged in this case, Ryder's claim would in all probability be legally cognizable in New York courts, and would not be dismissed at the pretrial stage. *See Roldan v. Allstate Insurance Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359, 370 (1989) (noting New York courts' "reluctance" to dismiss such claims because of deficiencies in the pleadings).

In light of the contrast between the unfavorable treatment claims of bad faith conduct by an insurer receive in the courts of Virginia, and the respectability they have attained in the courts of Connecticut and New York, it is clear that National Union's proposed amendment seeking compensatory and punitive damages would not neces-

---

**3.** In Virginia, limited statutory remedies are nevertheless available to Ryder which exceed pure contract liability. Contrary to the assertions of National Union, an insured may be awarded attorney's fees generated in a suit against its insurer for a determination of coverage under the policy if it shows that the insurer

"not acting in good faith, . . . denied coverage or failed or refused to make payment to the insured under the policy." Va.Code Ann. § 38.2–209, or seek the imposition of penalties for its insurers' violations of the Unfair Insurance Practices Act, *id.* §§ 38.2–218, –510.

sarily be futile if Connecticut or New York law were to govern the claim. This Court must, therefore, now determine which state's law would properly govern the proposed bad faith count.

### B. *Choice of Law*

The difficulty the Court faces in making the choice of law determination results from the dual nature of the claim. As the Fourth Circuit has recognized, "[t]he doctrinal roots of the obligation [of good faith] are notoriously elusive: one scholar has argued that actions for bad faith sound in 'conequitort,' suggesting the interaction among concepts of contract, equity, and tort." *A & E Supply*, 798 F.2d at 676 (quoting Holmes, *Inductions from a Study of Commercial Good Faith in First–Party Insurance Contracts*, 65 Cornell L.Rev. 330, 377 (1977)).

 For purposes of this choice-of-law decision, the characterization of the claim is particularly important because of the choice-of-law rules that flow from the characterization. A federal court sitting in diversity jurisdiction must apply the substantive law of the forum, including the forum's choice-of-law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because the forum is Virginia, if characterized as a tort claim, the doctrine of *lex loci delicti* applies and requires Virginia law to govern the matter because the alleged tort of bad faith failure to defend or settle took place in Virginia. 4A Michie's Jurisprudence § 33, at 131 (1990). If characterized as a contract claim, then Vir-

ginia choice-of-law decisions require the effect of the contract to be governed by the law of the place where the contract was made. *Poole v. Perkins*, 126 Va. 331, 334, 101 S.E. 240 (1919); 4A Michie's Jurisprudence § 26, at 127.

 Although Connecticut law characterizes bad faith on the part of an insurer in a claim resolution as an independent tort claim which should be stated separately from the claim for breach of contract, *Grand Sheet Metal*, 375 A.2d at 430, Virginia and New York characterize the claim as a matter of pure contract law. *See A & E Supply*, 798 F.2d at 676; *Kamlar*, 224 Va. at 707, 299 S.E.2d 514; *Gordon*, 334 N.Y.S.2d at 608, 285 N.E.2d at 854, *Royal Globe*, 449 N.Y.S.2d at 743. Virginia's characterization of the claim controls in this forum. Therefore, applying Virginia choice of law rules, together with Virginia's substantive determination that the bad faith claim is a pure contract claim, the Court must apply to this claim the law of the state in which the contract was formed—either Connecticut or New York, and if necessary, allow the claim of bad faith conduct to proceed to the jury.[4]

Although this Court is loath to give the law of tort any toehold in what it perceives to be a purely contract action, it is persuaded that various policy considerations support this decision. Even when a liability policy that covers vehicles moving across state lines fails to include a choice-of-law provision, it is nevertheless reasonable to assume that the contracting parties did not intend the legal issues which inevitably would arise under the contract to be governed by the disparate laws of the vari-

---

4. The remarkable irony of this result is that a determination that the action sounds in tort would allow the Court to apply Virginia substantive law under the doctrine of *lex loci delicti* and thereby disallow amendment of the Complaint on the basis that under Rule 15, justice would not require an amendment that merely adds a noncognizable claim. This result is much to be sought in view of Virginia's policy of refusing to "turn every breach of contract into a tort." W. Prosser, Handbook on the Law of Torts § 92, at 614 (4th ed. 1971), *see Kamlar*, 299 S.E.2d at 517 (quoting from Prosser). But because the Fourth Circuit has held that bad

faith dealing is a pure contract claim under Virginia law, the claim must survive.

The fact that this result violates Virginia public policy gives rise to an argument that contrary law should not be imported into this state. But that exception is unavailing here, because the Virginia Supreme Court has already ruled that Virginia's policy against combining tort and contract actions on insurance policies "is not so compelling as to override the application" of another state's contrary substantive law. *Willard v. Aetna Casualty and Surety Co.*, 213 Va. 481, 193 S.E.2d 776, 779 (1973).

ous states through which the insured vehicles would pass. At least with respect to contractual disputes, applying the law of the state in which the liability insurance contract was formed affords the contracting parties a degree of stability and certainty which would otherwise be lacking. *See Boseman v. Connecticut General Life Insurance Co.,* 301 U.S. 196, 206, 57 S.Ct. 686, 691, 81 L.Ed. 1036 (1937) (choice of law of the state in which an insurance contract was formed was based in part on a policy of supporting the parties' intent that it should "have the same meaning and give the same protection, and that inequalities and confusion liable to result from applications of diverse state laws [should] be avoided.")

The same policy also counsels against this Court applying the law of Virginia by means of a prominent exception to the general rule favoring the law of the state in which the contract was formed. The exception may apply in cases where the contract is to be performed in a different state from that in which it was created. *Sneed v. American Bank Stationary Co.,* 764 F.Supp. 65, 66–67 (1991); *Poole,* 126 Va. at 334, 101 S.E. 240. But in *Heavner v. State Automobile Mutual Insurance Co. of Colombus, Ohio,* 350 F.Supp. 859 (W.D.Va.1972), the court refused to apply the exception. The *Heavner* case involved an accident in Virginia, a policy issued in Maryland, and an insured vehicle garaged in Georgia. Judge Dalton interpreted the contract to mean that the place of performance of the insurance contract was the jurisdiction in which the insured vehicle was principally garaged—namely Georgia. Virginia was not held to be the place of performance, in spite of the facts that it was the situs of the accident, and also the jurisdiction in which a diversity action was filed in this Court to recover from the plaintiff's insurer an unsatisfied judgment against the tortfeasor. *Heavner's* closely analogous facts counsel strongly against accepting the argument that the place of breach was the place of performance. Judge Dalton's ruling also showed his concern that the parties not be subjected to

governance by the laws of a state with which they had no substantial contact.

Similarly, Judge Williams recently rejected the place-of-performance exception in a case in which he found that the contract at issue was intended by the parties to be performed in both Virginia and Tennessee. *See Roberts v. Aetna Casualty & Surety Co.,* 687 F.Supp. 239 (1988). That case involved an automobile liability contract taken out by a Tennessee resident who owned and worked a farm in a neighboring county in Virginia. The court concluded that the parties intended the contract to be performed in both states because the policy holder lived in a border region. It then considered commentary from the Restatement (Second) of Conflict of Laws (1971), explaining that

> The place of performance can bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or where (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue."

*Id.* § 188, comment e, at 580. The court therefore decided to apply the law of Tennessee, where the contract was formed. This Court must agree that to subject Ryder and National Union to the varying laws of the fifty states would undermine the consistent interpretation of their contract. For all of these reasons, Virginia law is inapplicable.

Unfortunately, this matter does not conclude here. At this stage in the litigation, the record is not sufficiently developed for this Court to make a determination as to whether Connecticut or New York law governs the insurance contract. That decision must await another day.

An appropriate Order shall this day issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day,

ADJUDGED AND ORDERED as follows:

1. Summary judgment shall be, and it hereby is, granted in favor of defendant UTF Carriers, and UTF Carriers is hereby dismissed from this action with prejudice.

2. Partial summary judgment on the issue of liability for breach of contract shall be, and it hereby is, granted in favor of plaintiff Ryder Truck Rental, and denied with respect to defendant National Union Fire Insurance.

3. Leave shall be, and it hereby is, given to Ryder Truck Rental to amend its Complaint, and to National Union Fire Insurance to amend its Answer.

4. Upon consideration of the record filed by the parties in the above-styled action, the Court has determined that further development of this case is necessary. Therefore, this case shall be, and it hereby is, referred to United States Magistrate Judge B. Waugh Crigler, pursuant to the authority of 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge is directed to conduct whatever proceedings he deems appropriate and to submit to this Court proposed findings of fact and recommendations for the disposition of the following issues:

 a. Are insurance policy numbers RMBA 9199355 and RMGLA 1978443 properly governed by the laws of Connecticut or New York?

 b. Are the legal fees and costs generated by Ryder Truck Rental in litigating the issue of coverage reasonable? If not, what fees and costs are reasonable?

 c. Are sanctions appropriate pursuant to Rule 11, F.R.C.P. against counsel for National Union Fire Insurance?

The Court also requests that the Magistrate Judge adjudicate pursuant to the authority granted by 28 U.S.C. § 636(b)(1)(A), all nondispositive pretrial scheduling issues and discovery disputes relating to discovery under Count II of the Amended Complaint.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.